**Bruce HOWARD, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A04–0704–CR–234.**

Court of Appeals of Indiana.

Sept. 20, 2007.

Gregory Paul Kauffman, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Bruce Howard appeals his conviction for Burglary,[1] a class B felony. Specifically, Howard argues that (1) the evidence presented at trial was insufficient to sustain his conviction, (2) the trial court erroneously believed it could not suspend any portion of his sentence because he was a habitual offender, and (3) his sentence is inappropriate in light of the nature of the offense and his character. Although we find that the evidence presented at trial was sufficient and that Howard's sentence is not inappropriate, the trial court incorrectly described the applicable law during the sentencing hearing; therefore, we remand this cause to the trial court for an opportunity, if it so desires, to suspend up to nine years of Howard's sentence. Additionally, we instruct the trial court to amend the sentencing order to reflect that Howard's habitual offender enhancement is not a separate conviction.

_____

1. Ind.Code § 35–43–2–1.

### FACTS

On June 5, 2006, Ashley Jeremiah returned to her South Bend residence at noon after she had finished working. After eating lunch and watching television, Jeremiah left her home to go for a bicycle ride, locking the doors to her residence as she left. While Jeremiah was gone, Wanda Dick, her neighbor, observed a man in a blue shirt unsuccessfully attempting to enter Jeremiah's home through a window. As the man walked to the north side of Jeremiah's home, Dick called the police.

South Bend Police Officer Keenan Lane arrived within minutes. Officer Lane walked to the north side of Jeremiah's home and observed a window ajar with a screen pushed out. Officer Lane called for backup assistance after he heard a "banging noise" inside the home. Tr. p. 66. Corporals Kevin Gibbons and Gary Reynolds arrived shortly thereafter.

As Officer Lane was standing at the rear door of the house, "[t]he door handle started turning, and the door opened up ... [and he] saw a black male looking at [him] with a white bag in his hand." *Id.* at 67. Officer Lane drew his handgun and ordered Howard to put his hands in the air. Howard told Officer Lane that he was the owner of the home, slammed and locked the door, ran through the house, and exited the house through the front door. Corporal Reynolds was positioned on the front porch of the house and saw Howard flee the property.

The officers pursued Howard and ordered him to stop, but he did not comply. Corporal Reynolds entered his police vehicle and Corporal Gibbons and Officer Lane pursued Howard on foot. Howard entered a nearby field and Corporal Gibbons lost sight of him for "twenty, thirty seconds." *Id.* at 125. Corporal Reynolds saw How-

ard and maneuvered his vehicle to trap Howard between a fence and the vehicle. However, Howard side-stepped the front fender of the vehicle and ran past Corporal Reynolds. Corporal Reynolds again pursued Howard and quickly made contact, causing Howard to roll on top of the vehicle and land on the ground. Officer Keenan and Corporal Gibbons arrived shortly thereafter, and Howard was placed under arrest.

On June 7, 2006, Howard was charged with class B felony burglary and with being a habitual offender. A three-day jury trial began on September 5, 2006, and the jury found Howard guilty of class B felony burglary. Howard waived his right to a jury trial on the habitual offender count, and he was adjudged a habitual offender after a bench trial. After a sentencing hearing on October 4, 2006, the trial court sentenced Howard to fifteen years imprisonment for the burglary conviction and to twenty years imprisonment for the habitual offender finding. The trial court ordered the sentences to be executed and run consecutively, for an aggregate executed term of thirty-five years imprisonment. Howard now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency

Howard argues that there is insufficient evidence to sustain his conviction for class B felony burglary. Specifically, Howard argues that there was insufficient evidence that he was the man inside Jeremiah's house because he was arrested several blocks away from the house and the officers lost sight of the suspect during the pursuit.

■ The standard of review for sufficiency claims is well settled. In addressing Howard's challenge we neither reweigh the evidence nor reassess the credibility of witnesses. *Sanders v. State*, 704 N.E.2d 119, 123 (Ind.1999). Instead, we consider the evidence most favorable to the verdict and draw all reasonable inferences supporting the ruling below. *Id.* We affirm the conviction if there is probative evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *O'Connell v. State*, 742 N.E.2d 943, 949 (Ind.2001). A conviction may be sustained on circumstantial evidence if such evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000).

■ To sustain a conviction for class B felony burglary, the State was required to prove beyond a reasonable doubt that Howard broke and entered Jeremiah's dwelling with the intent to commit a felony therein. I.C. § 35-43-2-1. Howard primarily argues that his conviction cannot stand because "[t]he State did not call a witness who could testify that they saw Bruce Howard inside the house on June 5, 2006." Appellant's Br. p. 5. He directs us to Officer Lane's testimony, which Howard alleges "gives some insight into the honest truth," *id.*, that when Officer Lane was standing at the rear door he saw "a *black male* looking at [him] with a white bag in his hand." Tr. p. 76 (emphasis added). Howard criticizes the testimony and argues that if Officer Lane had been convinced that Howard was the man inside the house, he would have testified that he saw *Howard* exit the rear door instead of using generic terminology.

We find Howard's argument extremely unpersuasive. First, Officer Lane was two and one-half feet from Howard when Howard exited Jeremiah's home, and Officer Lane later testified that Howard was "the male that I saw inside the house originally." Tr. p. 73, 81. Furthermore, Corporals Gibbons and Reynolds both testified that they saw the man that fled Jeremiah's

house and that Howard was the "same individual." *Id.* at 118, 145. Specifically, Corporal Reynolds testified that he got a "good look at" Howard when he fled the home and that he was "one hundred percent" sure that Howard was "the same individual that ran out of the house." *Id.* at 141, 145. This evidence was more than sufficient to prove beyond a reasonable doubt that Howard was the man inside Jeremiah's house, and Howard's argument to the contrary fails.

Howard also argues that "absolutely no evidence was introduced at trial to suggest that [Howard] entered [Jeremiah's residence] with the intent to commit a felony therein." Appellant's Br. p. 7. Howard emphasizes that the only evidence presented at trial was that he possessed a white bag inside the home, which was later found to contain trash.

■ A defendant's intent may be inferred from the time, force, and manner of entry where there is no evidence that the entry was made with some lawful intent. *Gray v. State,* 797 N.E.2d 333, 336 (Ind.Ct. App.2003). Here, the record reflects that the time, force, and manner of Howard's entry into Jeremiah's home suggest that he entered the home with the intent to commit a felony therein. Therefore, we conclude that there was sufficient evidence to convict Howard of class B felony burglary.

## II.  Sentencing

### A.  Habitual Offender

Howard does not challenge the trial court's finding that he is a habitual offender. Instead, he argues that the trial court incorrectly believed that it was not permitted to suspend any portion of Howard's sentence and that this incorrect interpretation of the law was prejudicial.

Indiana Code section 35–50–2–8 provides:

(a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

\* \* \*

(h) The court *shall* sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years.

(Emphasis added).

■ A habitual offender finding does not constitute a separate crime nor does it result in a separate sentence. *Barnett v. State,* 834 N.E.2d 169, 173 (Ind.Ct.App. 2005). Rather it results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Id.* We have previously held that "where a criminal defendant receives an enhanced sentence under the habitual offender statute, such sentence may not be suspended." *Reffett v. State,* 844 N.E.2d 1072, 1074 (Ind.Ct.App. 2006). Moreover, we recognized in *Devaney v. State* that "the habitual substance offender statute requires that the court 'shall' sentence the defendant 'to an additional fixed term'.... We need scarcely mention that permitting the suspension of an enhanced sentence imposed under this statute would defeat the clear intent of the legislature to punish and deter recidivistic conduct." 578 N.E.2d 386, 388–89 (Ind.Ct. App.1991).

At sentencing, the trial court bluntly stated,

> I want—before I mention some of the things that are in my mind as to why I'm sentencing you the way I am, I want to express on this record very clearly what I regard as an effect of the existing law in this case that very frankly has had some bearing on my sentence. My understanding of the existing law is that when a defendant is sentenced on a conviction for a felony with a mandatory minimum executed sentence and where that sentence is further enhanced by an habitual offender enhancement, the existing law as I understand it ... [is that] when there is a mandatory minimum and an enhancement by an habitual offender, *the sentencing court is without power to suspend any part of that entire sentence.*
>
> I am saying that that is my understanding of the way the law is, and I am bound—I took an oath to and I am bound to follow the law as it now exists. I am frankly saying I think it should be re-visited.... And if this case is being appealed, the sentence should be one of the things that is appealed. Because I am telling you that *I am sentencing with my belief that I have to impose all of the sentence as an executed sentence, none suspended.*
>
> I will very frankly share that *if I had the ability, the legal ability to suspend some of this sentence, I will tell you very frankly I would have been inclined,*
>
> *I believe, to suspend part of the sentence.*

Sent. Tr. p. 49–51 (emphases added).

The trial court went on to state that it understood that it had to impose a minimum executed sentence of six years for Howard's class B felony burglary conviction because of his prior unrelated felony convictions[2] and that it had to impose at least ten years[3] executed for the habitual offender enhancement. Therefore, the trial court correctly noted that, at the very least, it had to impose a sixteen-year executed sentence—six years for the class B felony conviction and ten years for the habitual offender enhancement. Tr. p. 52.

■ However, while the trial court correctly summarized these sentencing principles, it ultimately misstated a key principle of law. It is well-established that a "habitual offender finding does not constitute a separate crime nor does it result in a separate sentence." *Barnett,* 834 N.E.2d at 173. However, the enhancement is still *"imposed upon* the conviction of a subsequent felony." *Id.* (emphasis added). Therefore, while a habitual offender ultimately receives one sentence, that sentence consists of two components—the sentence for the underlying conviction and the habitual offender enhancement.

■ We have previously held that "where a criminal defendant receives an enhanced sentence under the habitual offender statute, such sentence may not be suspended." *Reffett,* 844 N.E.2d at 1074. However, that language explicitly refers to the portion of the sentence imposed pursu-

---

**2.** Indiana Code section 35–50–2–2 provides, in relevant part, that "the court may suspend only that part of the sentence that is in excess of the minimum sentence ... [if t]he crime committed was a Class A or Class B felony and the person has a prior unrelated felony conviction." Howard has five unrelated prior felony convictions. Appellant's App. p. 5–7.

**3.** Because Indiana Code section 35–50–2–5 provides that the advisory sentence for a class B felony is ten years, the habitual offender statute required the trial court to impose an enhancement of at least ten years to Howard's sentence. I.C. § 35–50–2–8.

ant to the habitual offender statute. Therefore, while the trial court was required to order the habitual offender enhancement to be fully executed, the general sentencing guidelines apply to the trial court's sentence for the underlying conviction. Therefore, the trial court did have the authority to suspend a portion of the sentence for the underlying conviction as long as that sentence complied with the applicable sentencing statutes.

Here, the trial court was required to order, at a minimum, a six-year executed sentence for Howard's class B felony conviction and a ten-year habitual offender enhancement. I.C. § 35–50–2–2, –8. However, while it ultimately determined that a fifteen-year sentence was appropriate for the class B felony conviction, the trial court had the authority to suspend up to nine years of that portion of the sentence—authority that it did not believe it possessed. We appreciate the trial court's candor during sentencing and because it incorrectly[4] summarized the law and admitted that its interpretation had a prejudicial impact on Howard's sentence, we remand this cause to the trial court for an opportunity, if it so desires, to suspend up to nine years of Howard's sentence.

■ Additionally, we note that the trial court imposed a separate sentence for the habitual offender enhancement and ordered that sentence to run "consecutively"

to the sentence for the class B felony. Appellant's App. p. 5. However, we have previously held that it is error for a trial court to impose a habitual offender enhancement separately and consecutively to an underlying conviction because the enhancement is *not* a separate conviction. *Barnett*, 834 N.E.2d at 173. Therefore, upon remand, we instruct the trial court to correct the sentencing order to reflect that the habitual offender enhancement is not a separate conviction.

## B. Appropriateness

■ Howard argues that his thirty-five year sentence is inappropriate in light of the nature of the offense and his character. Although we have already decided to remand this cause to the trial court for an opportunity to resentence Howard, we will still address Howard's appropriateness argument for purposes of judicial economy.

The amended sentencing statutes[5] provide that for a class B felony a person "shall be imprisoned for a fixed term of between six (6) years and twenty (20) years, with the advisory sentence being ten (10) years." I.C. § 35–50–2–5. At the sentencing hearing, the trial court noted Howard's extensive criminal history to be a "really significant" aggravating factor but cited his supportive family and "honest" allocution statement as favorable factors. Tr. p. 54.

---

4. While researching this issue, we were unable to find a case clearly summarizing the current relationship between the general sentencing statutes and the habitual offender enhancement statute. During sentencing, Judge Frese cited our court's ruling in *Stanek v. State*—a case originating from his court—which held that the trial court "had no authority to suspend any portion of [the defendant's] enhanced sentence." 587 N.E.2d 736, 739 (Ind.Ct.App.1992), *relevant issue summarily aff'd by* 603 N.E.2d 152 (Ind.1992). However, the exact scope of our court's holding in *Stanek* is ambiguous because the cited

language does not specify whether it refers to the defendant's aggregate sentence or to the habitual offender enhancement alone. Furthermore, the applicable sentencing statutes have been amended numerous times since the *Stanek* decision.

5. Howard committed the offense after the April 2005 amendment of the sentencing statutes; thus, we will apply the amended versions thereof. *Gutermuth v. State*, 868 N.E.2d 427, 431 n. 4 (Ind.2007).

Our court has the constitutional authority to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." Indiana Appellate Rule 7(B). However, sentence review under Appellate Rule 7(B) is deferential to the trial court's decision, *Martin v. State*, 784 N.E.2d 997, 1013 (Ind. Ct.App.2003), and we refrain from merely substituting our judgment for that of the trial court, *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003). The burden is on the defendant to persuade us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006).

With regard to the nature of the offense, Howard burgled Jeremiah's house in broad daylight after she had left her home to go for a bicycle ride. Although Howard's initial attempt to obtain access through a window failed, he did not abandon his illegal actions and, instead, obtained access through another window. The time, force, and manner of Jeremiah's entry suggest that he entered with the intent to commit a felony therein, and the sentence is not inappropriate simply because a perceptive neighbor called the police, who promptly arrived at the scene. Furthermore, instead of surrendering when the police caught him burglarizing Jeremiah's home, Howard fled from the scene, causing a police chase and endangering the general public. Thus, the nature of the offense does nothing to aid Howard's inappropriateness argument.

As for Howard's character, his extensive criminal history spans twenty years and consists of fourteen prior misdemeanor convictions and five prior felony convictions—class C felony burglary, class D felony sexual battery, class D felony theft, class D felony auto theft, and class D felony possession of cocaine. While the majority of Howard's previous crimes have been misdemeanors, his recent offenses are mostly felonies, demonstrating Howard's ever-increasing disregard for the law. Furthermore, Howard has progressed from victimless drug-related crimes to crimes affecting innocent members of the public. And three of his prior felony convictions are theft-related offenses similar to the offense at issue herein. In sum, Howard has continuously shown his disregard for the law and his failure to be rehabilitated by lenient sentences. Thus, his character does not aid his argument, and we do not find his thirty-five year sentence to be inappropriate.

The judgment of the trial court is affirmed in part, but we remand this cause to the trial court for an opportunity, if it so desires, to suspend up to nine years of Howard's sentence. Additionally, we instruct the trial court to amend the sentencing order to reflect that Howard's habitual offender enhancement is not a separate conviction.

BAILEY, J., and VAIDIK, J., concur.