**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender
Indianapolis, Indiana

**KAREN CELESTINO-HORSEMAN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 31 2012, 9:31 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL BURNETT,          )
                          )
    Appellant-Defendant,   )
                          )
    vs.                    )     No. 49A02-1112-CR-1119
                          )
STATE OF INDIANA,         )
                          )
    Appellee-Plaintiff.    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49G02-1108-FB-59124

July 31, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a bench trial, Michael Burnett appeals his convictions for burglary[1] as a Class B felony and theft[2] as a Class D felony and his adjudication as an habitual offender.[3] He raises two issues that we consolidate and restate as: whether the State presented sufficient evidence to sustain his convictions for theft and burglary.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of August 19, 2011, Monica Conley was at home in her Indianapolis apartment with her six-year-old daughter. She heard a loud noise, looked out a back, upstairs window and saw Burnett and several other people outside her apartment. Conley and Burnett had been romantically involved "on and off" for about eight months, but were not together as a couple on August 19, although at that time Conley was pregnant with his child. *Tr.* at 10. Feeling "panicked" at seeing Burnett, her "ex-boyfriend," Conley took her daughter and locked the two of them in an upstairs bathroom. *Id.* at 17. While in the bathroom, she heard the back door to her apartment being kicked in and people in her apartment. She recognized Burnett's voice and that of another man speaking inside her apartment.[4] Conley called 911. Indianapolis Metropolitan Police Department ("IMPD") officers were in the area and responded within minutes to the burglary-in-progress call. Officers entered her home,

---

[1] *See* Ind. Code § 35-43-2-1.

[2] *See* Ind. Code § 35-43-4-2.

[3] *See* Ind. Code § 35-50-2-8.

[4] Conley recognized the other voice as belonging to Anthony Dixon, who was the father of her six-year-old child. Conley testified that she regularly called the police regarding Dixon, including for his alleged attempt to "snatch" her daughter from the bus stop. *Tr.* at 12.

2

confirmed the house was clear of intruders, and coaxed Conley and her daughter from the bathroom. Looking around the residence with the officers, Conley noticed her forty-two-inch-screen television was missing from her upstairs bedroom.

In her 911 call, Conley had given a description of Burnett and his vehicle to authorities. While responding to the dispatch, IMPD Officer Justin Watson stopped a vehicle being driven by Burnett and carrying a male passenger. A large flat-screen television was in the back seat of the car, facing downward.

The State charged Burnett with burglary as a Class B felony, theft as a Class D felony, and criminal mischief as a Class A misdemeanor. Thereafter, the State alleged that Burnett was an habitual offender.

At trial, Conley testified that she bought the television, that Burnett had no involvement with or contribution to the purchase of the television, and that she and Burnett "were not together" at the time she purchased it. *Id*. at 35. She also confirmed that Burnett had no claim to the television, and she had not given him permission to take it. In contrast, Burnett testified that, although he broke into Conley's apartment and took the television, he and Conley owned the television together because they had purchased it together. Therefore, he explained, he did not intend to steal the television; he was seeking to recover what was already his.

Following a bench trial, Burnett was convicted of theft, burglary, and adjudged to be an habitual offender. He now appeals his convictions for theft and burglary.

**DISCUSSION AND DECISION**

The issue before us is whether the evidence was sufficient to sustain Burnett's convictions for burglary and theft. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Howard v. State*, 873 N.E.2d 685, 688 (Ind. Ct. App. 2007); *Brink v. State*, 837 N.E.2d 192, 194 (Ind. Ct. App. 2005), *trans. denied*. These evaluations are for the trier of fact, not appellate courts. *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012). We consider the evidence most favorable to the verdict and draw reasonable inferences that support the ruling below. *Howard*, 873 N.E.2d at 685. We will affirm a conviction if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id*. We assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented at trial. *Baker*, 968 N.E.2d at 229 (emphasis in original).

To prove Class B felony burglary, the State was required to prove beyond a reasonable doubt that Burnett broke and entered Conley's dwelling with the intent to commit a felony therein, in this case theft. Ind. Code § 35-43-2-1(1)(B)(i); *Howard*, 873 N.E.2d at 688. The offense of theft is governed by Indiana Code section 35-43-4-2(a), which provides in part that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft[.]" Thus, the State was required to prove beyond a reasonable doubt that Burnett knowingly or intentionally exerted unauthorized control over Conley's television with intent to deprive her of any part of its value or use.

Although Burnett admits that he broke into and entered Conley's apartment, where he

4

did not reside, he contends that the evidence was insufficient to prove that he did so with the intent to commit theft, because his only intention was "to recover a television set in which he held an undivided ownership interest" with Conley. *Appellant's Br.* at 2. Thus, he argues, the State failed to prove the intent element, and the evidence was not sufficient to convict him of theft and burglary. Burnett's sufficiency claims, however, are simply a request for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *Brink*, 837 N.E.2d at 194.

The record before us reveals that, on August 19, when Burnett pushed open the door to Conley's apartment, he was upset with her because of issues previously occurring between them. Burnett stated that he "was just trying to get some of [his] belongings," including the television that he claimed partially belonged to him. *Tr.* at 69. He said that he carried the television down the stairs and to the car by himself, although Officer Gerry Torres, an evidence technician, had testified that he needed the assistance of another officer to remove the "rather large" television from the back seat of the car. *Id.* at 55. In contrast to Burnett's claimed interest in the television, Conley testified that Burnett had no ownership interest in it, and Burnett did not have permission to take it. As the State observes, Burnett presented no evidence to support his claim that he bought the television with Conley, such as when and where the television was purchased, its price, and what amount he contributed. The trial court heard the witnesses and evaluated their credibility, specifically finding that Conley's testimony was credible. *Id.* at 74. Sufficient evidence existed to support Burnett's convictions for theft and burglary. Affirmed.

BAKER, J., and BROWN, J., concur.