

FILED

09/15/2017, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jacob O. Robinson, | September 15, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 22A01-1604-CR-856 |
| v. | Appeal from the Floyd Circuit Court |
| State of Indiana, | The Honorable J. Terrence Cody, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 22C01-1402-FD-377 |

**Pyle, Judge.**

# Statement of the Case

Jacob O. Robinson ("Robinson") appeals the sentence imposed following his guilty plea to Class D felony attempted residential entry[1] and his admission to being an habitual substance offender.[2] Robinson argues that: (1) the trial court abused its discretion by denying his motion to continue his sentencing hearing; and (2) his sentence is inappropriate. However, we need not address these issues because we *sua sponte* conclude that Robinson's habitual substance offender adjudication and enhancement of the sentence for a non-substance offense was contrary to statute. Because the trial court entered an illegal sentence and the parties' plea agreement—which left sentencing open to the trial court's discretion—does not allow the trial court to lawfully enter an habitual substance offender sentencing enhancement, we reverse and remand to the trial court for further proceedings.

We reverse and remand.

# Issue[3]

> Whether this case should be reversed and remanded to the trial court because the habitual substance offender adjudication and enhancement of a non-substance conviction was contrary to statute.

---

[1] IND. CODE §§ 35-43-2-1.5; 35-41-5-1. We note that, effective July 1, 2014, a new version of this residential entry statute was enacted and that Class D felony attempted residential entry is now a Level 6 felony. Because Robinson committed his crime in February 2014, we will apply the statute in effect at that time.

[2] I.C. § 35-50-2-10. Effective July 1, 2014, this habitual substance offender statute was repealed.

[3] Because we conclude that the trial court entered an illegal sentence that requires a remand to address the sentencing error, we will address neither Robinson's appellate challenges nor the State's request to reconsider our motions panel's order that denied the State's previous motion to dismiss.

Facts

[3] On February 21, 2014, Robinson fled on foot from the police, and, in an attempt to evade the police, approached the door of a stranger's home, beat on the door to try and gain entry, and broke the door knob. Thereafter, the State charged Robinson, under cause number 22C01-1402-FD-377 ("Cause 377"), with the following: (1) Class D felony attempted residential entry; (2) Class D felony possession of methamphetamine; (3) Class D felony unlawful possession of a syringe; (4) Class A misdemeanor possession of marijuana; (5) Class A misdemeanor possession of paraphernalia; and (6) Class A misdemeanor resisting law enforcement. The State also alleged that Robinson was: (7) an habitual offender; and (8) an habitual substance offender.[4]

[4] A few months later, in November 2014, while Robinson was out on bond, he fled from the police while driving his car. The State then charged him, under cause number 22C01-1411-F6-1932 ("Cause 1932"), with Level 6 felony resisting law enforcement and alleged that he was an habitual offender.

[5] On May 1, 2015, Robinson entered into two different written "Blind" or open plea agreements with the State for Cause 377. Both plea agreements were file stamped by the trial court clerk. (App. Vol. 1 at 58-60, 75-77). In one of the

---

[4] The habitual offender allegation listed three prior convictions, and the habitual substance offender allegation contained six prior substance convictions.

plea agreements, Robinson agreed to plead guilty to Count 2, Class D felony possession of methamphetamine, and Count 8, the habitual substance offender allegation. In exchange, the State agreed to dismiss all remaining charges and the habitual offender allegation against him. In the other plea agreement, Robinson agreed to plead guilty to Count 1, Class D felony attempted residential entry, and Count 8, the habitual substance offender allegation. In exchange, the State agreed to dismiss all remaining charges and the habitual offender allegation against him. In both of these plea agreements, there was a provision marked to indicate that Robinson had agreed to waive his right to appeal. Specifically, the provision provided, "Defendant waives right to appeal and post-conviction relief." (App. Vol. 1 at 60, 77).[5] Robinson, his counsel, and the prosecutor signed both plea agreements.

[6] That same day, the parties met for a change of plea hearing. At the beginning of the hearing, however, Robinson's counsel informed the trial court that Robinson had had a "change of heart" and had decided that he wanted to

---

[5] In *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008), our Indiana Supreme Court explained that "[p]rovisions in a plea agreement that attempt to waive the right to post-conviction relief are void and unenforceable." Despite the fact that the waiver of post-conviction relief is unenforceable, the inclusion of that waiver does not invalidate the waiver of the right to direct appeal. *See Perez v. State*, 866 N.E.2d 817, 819 (Ind. Ct. App. 2007) (enforcing a defendant's waiver of direct appeal provision in his plea agreement that also contained a waiver of post-conviction relief), *trans. denied*. However, our supreme court has held that "the waiver of the right to appeal contained in a plea agreement is unenforceable where the sentence imposed is contrary to law and the Defendant did not bargain for the sentence." *See Crider v. State*, 984 N.E.2d 618, 619 (Ind. 2013). Here, Robinson pled guilty pursuant to an open plea agreement and, in the absence of an explicit agreement to a particular or specific sentence, "he was entitled to presume that the trial court would sentence him in accordance with the law." *Id.* at 625. Because we conclude that the trial court's sentencing was contrary to law, we further conclude that the waiver of appeal provision in Robinson's plea agreement is invalid and unenforceable.

proceed to trial. (Tr. 3). The State did not object to Robinson's request, and the trial court later set Robinson's case for trial on July 27, 2015.

[7] On July 23, 2015, Robinson pled guilty to Count 1, Class D felony attempted residential entry, and he admitted that he was an habitual substance offender as contained in Count 8. In return for Robinson's guilty plea, the State dismissed the remaining five charges and the habitual offender allegation against him. During the plea hearing, Robinson acknowledged that was leaving sentencing open to the trial court's discretion.[6] The trial court accepted his guilty pleas and entered judgments of conviction.[7] At the end of the plea hearing, the trial court set Robinson's sentencing hearing for September 24, 2015 at 10:30 a.m. The trial court also instructed Robinson, who was still out on bond, to report to the probation department so that a presentence investigation report ("PSI") could be compiled.

[8] Thereafter, the probation department contacted Robinson and scheduled a PSI interview on September 8, 2015, but he failed to show up for the appointment. Robinson also failed to show up for the second scheduled PSI interview on September 22, 2015. Nevertheless, the probation department compiled a PSI, which revealed that thirty-nine-year-old Robinson had an extensive criminal

---

[6] These terms were the same as contained in the written plea agreement that Robinson signed on May 1, 2015.

[7] That same day, Robinson also pled guilty to the Level 6 felony resisting law enforcement in Cause 1932.

history over the past twenty years, had violated probation multiple times, and had his probation revoked on at least four occasions.

[9] On September 24, 2015, the morning of sentencing, Robinson sent a text to his counsel at 6:34 a.m. In the text, Robinson asked his counsel to continue the sentencing hearing because he had a real estate closing "coming up in the next few days" and "wish[ed] to get his ducks in line." (Tr. 25). Robinson told his counsel that he "should get this case laid over." (Tr. 25).

[10] That same morning, Robinson's counsel had a bench trial for a different defendant in Clark County, and that trial lasted until after the scheduled 10:30 a.m. start time for Robinson's sentencing hearing. Around 11:00 a.m., Robinson's counsel faxed the Floyd Circuit Court a motion to continue Robinson's sentencing hearing "on the grounds that counsel [wa]s hopelessly detained in the Clark Circuit Court #3." (App. Vol. 1 at 63). Shortly after sending the fax, Robinson's counsel returned to Floyd County and appeared in the trial court for Robinson's sentencing hearing. Counsel explained to the trial court the reason for his own tardiness. Robinson's counsel acknowledged that Robinson knew about the sentencing hearing and informed the trial court about Robinson's text requesting counsel to continue the sentencing hearing. Counsel also stated that he had tried to call Robinson multiple times, but Robinson's phone did not accept phone calls and only accepted texts.[8] The trial court

---

[8] Robinson's counsel was unable to text due to a problem with his texting service provider.

denied the motion for a continuance. When doing so, the trial court noted its reasoning, in relevant part, as follows:

> Mr. Robinson was in Court on the day that this hearing was scheduled and he blew off two appointments with . . . the probation officer . . . in preparation of the [PSI] Report and that leads me to the conclusion that Mr. Robinson isn't taking this matter seriously[.]

(Tr. 27). The trial court proceeded to the sentencing hearing, and Robinson's counsel presented argument on his behalf.

[11] Prior to the trial court's imposition of Robinson's sentence, the prosecutor pointed out that there was an anomaly in the fact that Robinson had pled guilty to the attempted residential entry charge and the habitual substance offender allegation. The prosecutor stated that "in order for the Habitual Substance Offender to work he needed [to] have plead[ed] to a substance related offense" and that "[t]he Attempted Residential Entry was more appropriate for the Habitual Offender enhancement" with which Robinson had also been charged. (Tr. 32). The prosecutor pointed out that Robinson had agreed to plead to both during his plea hearing and stated that it "mentioned it now so that way down the road [Robinson] can't come back and file Post[-]Conviction Relief on the basis that he . . . should not have plead[ed] to the Habitual Substance Offender because his underlying offense wasn't substance abuse related." (Tr. 33). Robinson's counsel then asked whether the State was asking the trial court not to sentence Robinson on the habitual substance offender count, and the prosecutor stated:

> Well I – I think by just looking at this right now I think we need to revisit the whole thing unfortunately because our agreement was for him to plead guilty to a felony and then be convicted of a[n] habitual offender count. I think the attempt probably was for him to plead either to Residential Entry and Habitual Offender or the Possession of Methamphetamine for instance and plead to the Habitual Substance Offender[.] But we have one from one group and one from the other group I don't see how we can do that unless he's agreeing. . [. .]

(Tr. 33). The trial court interrupted and stated that it was "just not inclined to at this point to reopen this matter" when Robinson had failed to show for the sentencing hearing and that it was "inclined to move on[.]" (Tr. 34). The trial court further stated that it had "a method of dealing with this" and would "just go forward with it." (Tr. 34). The trial court then reiterated its acceptance of Robinson's guilty plea to the Class D felony attempted residential entry and the habitual substance offender allegation, and it imposed a three (3) year executed sentence for Robinson's Class D felony attempted residential entry conviction.[9] The trial court withheld determining the habitual substance offender enhancement until "when and if" Robinson appeared in person. (Tr. 35). The trial court stated that it would "figure . . . out later whether there w[ould] be additional time or not." (Tr. 36). The trial court also issued a warrant for Robinson's arrest for his failure to appear at the sentencing hearing and released his bond.

---

[9] For Robinson's Level 6 felony resisting law enforcement in Cause 1932, the trial court imposed a sentence of two (2) years and ordered that it be served consecutively to his Class D felony attempted residential entry conviction in this cause.

[12] In January 2016, Robinson was arrested. Thereafter, on March 3, 2016, the trial court held the supplemental sentencing hearing to determine the habitual substance offender enhancement. At that hearing, Robinson was represented by new counsel, and the State had a different prosecutor. The trial court, however, did not address nor discuss the concern raised from the prior sentencing hearing. The State recommended that the trial court sentence Robinson to three years on the habitual substance offender allegation and "run [it] consecutive" to the Class D felony attempted residential entry sentence. (Tr. 43). The trial court stated that it was going to adopt the State's recommendation, and it then imposed a separate sentence of three (3) years with one and one-half (1½) years executed and one and one-half (1½) years suspended to probation. When imposing this sentence, the trial court acknowledged that the habitual substance offender statute "says a minimum fixed term of imprisonment . . . that would tend to imply no probation[,]" but it stated that "case law on that topic is mixed[.]" (Tr. 48). The trial court also recommended that Robinson be placed in the Purposeful Incarceration Program and stated that it would consider a modification of his sentence upon completion of that program. Robinson now appeals.[10]

---

[10] While briefing occurred during this appeal, the State filed a motion to dismiss Robinson's appeal, arguing that his notice of appeal was untimely. Robinson filed a response and a motion for damages, arguing that the State's motion to dismiss was frivolous and filed in bad faith. Our motions panel denied the State's motion to dismiss and denied Robinson's motion for damages. As previously noted, the State requests this Court to reconsider our motions panel's order, and we decline this request.

# Decision

Robinson argues that: (1) the trial court abused its discretion by denying his motion to continue his sentencing hearing; and (2) his sentence is inappropriate. We will not, however, address these issues because we *sua sponte* conclude that Robinson's habitual substance offender adjudication and enhancement of a non-substance offense was illegal or contrary to statute, making remand necessary. *See Reffett v. State*, 844 N.E.2d 1072, 1073 (Ind. Ct. App. 2006) (explaining that "before we may consider the appropriateness of [a] sentence, we must first consider the legality of [the] sentence"). *See also Young v. State*, 901 N.E.2d 624, 626 (Ind. Ct. App. 2009) (reviewing *sua sponte* the legality of a defendant's sentence where the trial court erred when sentencing on the habitual substance offender enhancement), *reh'g denied*, *trans. denied*. "A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization. A sentence that exceeds statutory authority constitutes fundamental error." *Reffett*, 844 N.E.2d at 1073 (internal quotation marks and citations omitted). "It is the duty of appellate courts to bring illegal sentences into compliance[.]" *Devaney v. State*, 578 N.E.2d 386, 389 (Ind. Ct. App. 1991).

At the time of Robinson's offenses, the habitual substance offender statute, INDIANA CODE § 35-50-2-10, provided that the State could "seek to have a person sentenced as an habitual substance offender for any *substance* offense by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated substance offense convictions."

IND. CODE § 35-50-2-10(b) (emphasis added). A "substance offense" was defined as a "Class A misdemeanor or felony offense in which the possession, use, abuse, delivery, transportation, or manufacture of *alcohol or drugs is a material element of the crime*." I.C. § 35-50-2-10(a)(2) (emphasis added). Once a defendant was determined to be an habitual substance offender—whether at trial or by guilty plea—the trial court was then required to "sentence the person found to be an habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment," with that sentence enhancement to be added to the sentence imposed on the underlying substance offense. I.C. § 35-50-2-10(f). *See also Bauer v. State*, 875 N.E.2d 744, 747 (Ind. Ct. App. 2007) ("A habitual substance offender finding is not a separate crime but an enhancement of the sentence for the underlying crime to which it is attached."), *trans. denied*; *Howard v. State*, 873 N.E.2d 685, 690-91 (Ind. Ct. App. 2007) (explaining that an habitual offender receives one sentence comprised of "two components—the sentence for the underlying conviction and the habitual offender enhancement"). If, however, the trial court had found that three (3) or more years had elapsed since the defendant had been discharged from probation, imprisonment, or parole for the last unrelated substance offense conviction, then the court could have reduced the additional fixed term to as little as one year. I.C. § 35-50-2-10(f)(1).

[15] Here, Robinson pled guilty to the non-substance offense of attempted residential entry and admitted to being an habitual substance offender. The trial court imposed a three (3) year sentence for the Class D felony non-

substance conviction and a separate three (3) year sentence, with one and one-half (1½) years executed and one and one-half (1½) years suspended to probation, for the habitual substance offender adjudication.

[16] The most problematic aspect of the trial court's sentencing in this case is the fact that the law does not allow for an habitual substance offender enhancement to be attached to a non-substance offense.[11] *See* I.C. § 35-50-2-10.  We recognize that defendant "'may not enter a plea agreement calling for an illegal sentence, benefit from that sentence, and then later complain that it was an illegal sentence." *Lee v. State*, 816 N.E.2d 35, 40 (Ind. 2004) (quoting *Collins v. State*, 509 N.E.2d 827, 833 (Ind. 1987)).  Here, however, Robinson pled guilty under an open plea and did not agree to a specified sentence.  Thus, the trial court was required to sentence Robinson in accordance with the prevailing law and statutes at that time.  *See Crider v. State*, 984 N.E.2d 618, 625 (Ind. 2013) (explaining that "the 'default rule' for

---

[11] We note that, had the underlying conviction properly been a substance offense, the trial court also erroneously entered a separate sentence for the habitual substance offender adjudication instead of enhancing the underlying offense, *see Reffett*, 844 N.E.2d at 1074, and it erroneously suspended half of the habitual substance offender enhancement.  *Compare Lindsey v. State*, 877 N.E.2d 190, 194 (Ind. Ct. App. 2007) (holding that an "[habitual substance offender] enhancement must be executed and cannot be suspended to probation"), *trans. denied*; *Howard*, 873 N.E.2d at 690-91 (explaining that the prohibition against suspension of an habitual offender enhancement applied only to habitual offender enhancement, not the underlying conviction); *Reffett*, 844 N.E.2d at 1074 (holding that "an enhanced sentence under the habitual offender statute . . . may not be suspended"); and *Devaney*, 578 N.E.2d at 388-89 (pointing out that the "habitual substance offender statute require[d] that the court 'shall' sentence the defendant 'to an additional fixed term' of between three and eight years" and reasoning that "permitting the suspension of an enhanced sentence imposed under this statute would defeat the clear intent of the legislature to punish and deter recidivistic conduct") *with Bauer*, 875 N.E.2d at 749 (holding that suspension of a sentence under INDIANA CODE § 35-50-2-2 applied to the minimum sentence of the underlying conviction plus the minimum enhancement of the habitual substance offender enhancement); and *Young*, 901 N.E.2d at 626 (applying *Bauer*).  We note that, under either line of cases, the trial court erred because it suspended half of the habitual substance offender enhancement only and not any portion of the underlying conviction.

plea agreements is that sentences will be determined and imposed legally, where there is no agreement otherwise"). But, the parties' plea agreement resulted in a situation under which the trial court had no legal or statutory authority to enter a sentence on the habitual substance offender adjudication.[12] Nevertheless, the trial court imposed a fully-executed sentence for the Class D felony non-substance conviction and a separate, partially-suspended sentence for the habitual substance offender adjudication.

[17] Because the trial court entered an illegal sentence, we must remand to the trial court for further proceedings. Generally, when the trial court errs in its sentencing on an habitual substance offender enhancement, we would remand for the trial court to resentence in accordance with the law. *See, e.g.*, *Young*, 901 N.E.2d at 626 (remanding for resentencing to correct illegal sentence and error with suspended habitual substance offender enhancement); *Bauer*, 875 N.E.2d at 747 (remanding case where the trial court erroneously treated an habitual substance offender enhancement as a separate sentence). Here, however, it was the plea agreement itself that was contrary to legal and statutory authority. A plea agreement is contractual in nature, and "a contract made in violation of a statute is void and unenforceable." *State v. Arnold*, 27 N.E.3d 315, 321 (Ind. Ct. App. 2015) (quoting *Lee*, 816 N.E.2d at 38), *reh'g denied*, *trans. denied*.

---

[12] As noted in the facts, this lack of sentencing authority was brought to the trial court's attention by the prosecutor during the sentencing hearing when he stated that the trial court and the parties "need[ed] to revisit the whole thing unfortunately because our agreement was for [Robinson] to plead guilty to . . . either to Residential Entry and Habitual Offender or the Possession of Methamphetamine for instance and plead to the Habitual Substance Offender[.]" (Tr. 33). However, the trial court, apparently frustrated with Robinson for failing to appear at the PSI interview and the sentencing hearing, stated that it was "just not inclined to at this point to reopen this matter" and that it was "inclined to move on[.]" (Tr. 34).

Accordingly, we vacate the sentence and plea agreement and remand with instructions to enter a new plea agreement and sentence that comply with the relevant statutory authority, or, if the parties cannot reach such an agreement, then the trial court should set the matter for further proceedings. *See Arnold*, 27 N.E.3d at 322 n.4 (noting that a "defendant is not put in jeopardy by a void judgment and may be re-prosecuted on the charge").

[18] Reversed and remanded.[13]

Baker, J., and Mathias, J., concur.

---

[13] We recognize that claims of error regarding a guilty plea are usually reserved for post-conviction relief. *See Johnson v. State*, 734 N.E.2d 242, 247 (Ind. 2000). However, given the specific facts of this case—including the fact that the illegal sentence imposed in this case was a direct result of the guilty plea being entered contrary to statute and the State's attempt during the sentencing hearing to have the trial court remedy the statutory problem with the guilty plea—we address the guilty plea in conjunction with our review of the legality of the sentence. Indeed, even if we were to remedy the sentencing anomaly by vacating the habitual substance offender enhancement, we would also vacate the plea agreement because it is clear from the record on appeal that eliminating the illegal provision would "frustrat[e] the basic purpose of the contract" and would change the sentence for which the parties had bargained. *See Arnold*, 27 N.E.3d at 322 (explaining that, where an habitual offender enhancement could not be eliminated from a plea agreement without frustrating the basic purpose of that agreement, the entire plea agreement also had to be vacated).