ATTORNEY FOR APPELLANT
Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court



FILED
Mar 21 2013, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

_____

### No. 91S05-1206-CR-306

TODD J. CRIDER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the White Superior Court, No. 91D01-1012-FD-150
The Honorable Robert B. Mrzlack, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 91A05-1108-CR-389

_____

**March 21, 2013**

**Rucker, Justice.**

In this case we conclude that the waiver of the right to appeal contained in a plea agreement is unenforceable where the sentence imposed is contrary to law and the Defendant did not bargain for the sentence.

**Facts and Procedural History**

On December 1, 2010 Todd J. Crider was charged in White County with theft, a class D felony, and he was also alleged to be a habitual offender. On May 31, 2011 Crider and the State submitted to the trial court a written plea agreement which provided that Crider would plead guilty as charged and admit his status as a habitual offender. Under terms of the agreement Crider was to be sentenced to a term of three years in the Department of Correction enhanced by three years for the habitual offender allegation. At the time of the agreement Crider had been convicted in Tippecanoe County of two counts of theft; one count of attempted fraud; adjudged to be a habitual offender; and ordered to serve a partially suspended 545-day sentence.

As originally drafted, a line in the plea agreement provided "The sentence in Count II [the habitual offender count] shall be served concurrent with an habitual offender enhancement received in Tippecanoe County." App. at 9. However, this line was scratched out and was initialed by both Crider and his attorney. Also as originally drafted the plea agreement provided for a sentence of one and one-half years for theft enhanced by one and one-half years for the habitual offender adjudication. This provision too was scratched out, replaced with three years, and initialed by Crider, his attorney, and the deputy prosecutor. The agreement further provided in pertinent part:

> The Defendant waives his right to appeal any sentence imposed by the trial court that is within the range set forth in the plea agreement. Further, the Defendant knowingly, intelligently and voluntarily waives his right to challenge the sentence on the basis that it is erroneous.

App. at 9. During its colloquy with Crider on his decision to plead guilty the trial court declared "if you've been convicted recently in Tippecanoe County, do you understand that the sentences imposed in this case, part of them or all of them, may have to be served consecutively to one

2

another, one after the other?" Tr. at 16. The trial court continued, "there may be some case law out there that would require if you are convicted of pending habitual offender charges, that that portion of your sentences, if they are similar, they may be served concurrently, but that's subject to Court interpretation, and we'll learn that at the sentencing hearing." Tr. at 16-17. Ultimately the trial court determined that Crider entered the plea voluntarily and that there was a factual basis for the same. The trial court then took the plea under advisement and ordered a presentence investigation report.

Based on the trial court's representation at the plea hearing, on the day of sentencing, July 18, 2011, Crider filed a Sentencing Memorandum that contended the habitual offender enhancement he was about to receive in this case could not be ordered to be served consecutively to the habitual offender enhancement Crider received in Tippecanoe County. Crider reiterated this point orally to the trial court at the sentencing hearing. See App. at 26. Accepting the parties' plea agreement the trial court sentenced Crider to three years for the theft conviction enhanced by three years for the habitual offender adjudication for a total executed term of six years. Rejecting Crider's argument concerning the Tippecanoe case the trial court declared:

> The Court has considered the defendant's Sentencing Memorandum. I interpret Indiana Code 35-50-2-8 with the circumstances that we have, to require that the habitual offender count enhance the sentence the defendant is convicted of here in White County. According to this ordering, that White County sentence is to be served consecutively to the sentence imposed out of Tippecanoe County . . . .

Tr. at 28. Crider appealed raising a single issue: "Whether the trial court's order that Todd Crider's habitual offender enhancement be served consecutively to the habitual offender enhancement in a case from Tippecanoe County was illegal." Br. of Appellant at 1. In a divided opinion the Court of Appeals dismissed Crider's appeal on grounds that under the terms of the plea agreement Crider agreed that he "knowingly, intelligently and voluntarily waive[d] his right to challenge the sentence on the basis that it is erroneous." Crider v. State, 966 N.E.2d 675, 676 (Ind. Ct. App. 2012) (quoting App. at 9). Having previously granted transfer we now reverse the judgment of the trial court.

3

## Discussion

Indiana Code section 35-50-2-8, the habitual offender statute, provides in relevant part that a person is a habitual offender if the jury or the court finds that the person "has accumulated two (2) prior unrelated felony convictions." And Indiana Code section 35-50-1-2 governs the authority of courts to order consecutive sentences. In Starks v. State, 523 N.E.2d 735 (Ind. 1988) this Court addressed for the first time the propriety of a trial court ordering sentences for two habitual offender counts to run consecutively. Initially we noted that although the habitual offender statute provides that a person may be sentenced as a habitual offender for "any felony," the statute did not answer the question of "whether the legislature has sanctioned the pyramiding of habitual offender sentences." Id. at 736. Analyzing the habitual offender statute—section 35-50-2-8—and the consecutive sentencing statute—section 35-50-1-2—we concluded that the imposition of consecutive habitual offender sentences was improper. In doing so the Court noted that although section 35-50-1-2 granted sentencing courts the discretion to order consecutive sentences, this discretion is limited by the rules of rationality and constitutional restrictions. Starks, 523 N.E.2d at 736. We observed that on the one hand a sentence enhanced by the habitual offender statute is based upon the existence of two prior unrelated felony convictions. On the other hand consecutive sentences are based upon the principle that each separate and distinct criminal act should receive a separately experienced punishment. Id. at 737. Further the Court observed that the statute was "silent on the question of whether courts have the authority to require habitual offender sentences to run consecutively, when engaged in the process of meting out several sentences." Id. at 737. With the foregoing considerations in mind the Court held "[i]n the absence of express statutory authorization for such a tacking of habitual offender sentences, there is none." Id.

Since Starks, the Court of Appeals has also addressed the issue of whether consecutive habitual offender sentences are proper. In Smith v. State, 774 N.E.2d 1021 (Ind. Ct. App 2002), trans. denied, the court found that imposing consecutive habitual offender enhancements was improper, even where the enhancements arose from separate and unrelated trial or sentencing hearings. Id. at 1024; see also Ingram v. State, 761 N.E.2d 883, 885-86 (Ind. Ct. App. 2002) (declaring trial court exceeded its legislative authorization in imposing consecutive habitual

4

offender sentences even though the sentences arose from a single sentencing hearing rather than a single criminal trial).

As this Court has more recently declared: "[u]nder Indiana law, a trial court cannot order consecutive habitual offender sentences." Breaston v. State, 907 N.E.2d 992, 994 (Ind. 2009). And "[t]his holds true whether the concurrent enhanced sentence is imposed in a single proceeding or in separate proceedings." Id. at 995.

In this case the State contends that as a "general rule" a trial court may not impose consecutive habitual offender enhancements. Br. of Appellee at 4. But the State argues the general rule does not apply in this case citing authority standing for the proposition that a defendant "may not enter a plea agreement calling for an illegal sentence, benefit from that sentence, and then later complain that it was an illegal sentence." Br. of Appellee at 4 (quoting Lee v. State, 816 N.E.2d 35, 40 (Ind. 2004)); see also Stites v. State, 829 N.E.2d 527, 529 (Ind. 2005) (rejecting argument that plea agreement involving illegal consecutive sentence is invalid); Collins v. State, 509 N.E.2d 827, 833 (Ind. 1987) (rejecting argument that felony conviction underlying habitual offender adjudication was illegal where conviction was based on plea agreement). But these cases are distinguishable.

Here Crider's plea agreement did not "call[] for an illegal sentence." Crider pleaded guilty under terms of an agreement that provided for a three-year sentence in the Department of Correction for the offense of theft enhanced by three years for his adjudication as a habitual offender. The agreement was silent on whether the sentence imposed was to run concurrently or consecutively with the sentence imposed in another county. There was nothing unusual or illegal about this arrangement. The problem however is that as a result of an apparent misapprehension of the law, the trial court was under the impression that it was "require[d]" to order the habitual offender-enhanced sentence imposed in this case to run consecutively to the habitual offender-enhanced sentence imposed by the court in Tippecanoe County. Tr. at 28. This aspect of the sentence was not a part of the parties' agreement. In consequence the trial court erred in imposing such sentence. We reiterate "[u]nder Indiana law, a trial court cannot order consecutive habitual offender sentences." Breaston, 907 N.E.2d at 994.

5

Nonetheless, citing this Court's opinion in Creech v. State, the State insists that by the very terms of Crider's plea agreement Crider has waived review of his sentence. In Creech, the defendant and the State entered into a plea agreement in which the defendant pleaded guilty to one count of class C felony child molesting and sentencing was left to the trial court's discretion with the limitation that the executed portion of any sentence was to be capped at six years. Also, the plea agreement contained the following waiver: "I hereby waive my right to appeal my sentence so long as the Judge sentences me within the terms of my plea agreement." 887 N.E.2d 73, 74 (Ind. 2008). At the conclusion of the sentencing hearing and in its sentencing order, the trial court advised Creech that he had a right to appeal his sentence. Creech appealed, asserting that his plea agreement was invalid because it was not made knowingly, voluntarily, and intelligently. This Court first recognized that whether such waivers should be enforceable at all was a question of first impression; but determined that "a defendant may waive the right to appellate review of his sentence as part of a written plea agreement." Id. at 75. Ultimately the Court rejected Creech's claim that the written waiver should not be enforced because the trial court orally advised Creech that he had a right to appeal. Id. at 77. Citing the Seventh Circuit, the Court recognized "[m]ost waivers are effective when set out in writing and signed." Id. at 76 (quoting United States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995), superseded by statute on other grounds). And Creech did "not claim that the language of the plea agreement was unclear or that he misunderstood the terms of the agreement at the time he signed it." Id. Instead, he argued that "his otherwise knowing and voluntary plea lost its knowing and voluntary status because the judge told him at the end of the sentencing hearing that he could appeal." Id. (footnote omitted). We concluded, "[b]y the time the trial court erroneously advised Creech of the possibility of appeal, Creech had already pled guilty and received the benefit of his bargain. Being told at the close of the hearing that he could appeal presumably had no effect on that transaction." Id. at 77. As the Court of Appeals subsequently noted, "it is clear that under Creech, a trial court's incorrect advisement *at the conclusion of a defendant's sentencing hearing* has no effect on an otherwise knowing, voluntary, and intelligent waiver of the right to appeal his sentence." Ricci v. State, 894 N.E.2d 1089, 1093 (Ind. Ct. App. 2008), trans. denied (emphasis added).

6

Ricci also involved a written plea agreement which provided the defendant waived his right to appeal. In contrast to Creech, however, the trial court in Ricci had unambiguously stated *at the plea hearing* that according to its reading of the plea agreement, Ricci had not surrendered the right to appeal his sentence, and the court's statement was not contradicted by counsel for either party. Id. In those circumstances, the Court of Appeals concluded that all parties "entered into the plea agreement with the understanding that Ricci retained the right to appeal his sentence" and held the waiver "a nullity." Id. at 1094.

The Court of Appeals was faced with a similar situation in Bonilla v. State, 907 N.E.2d 586 (Ind. Ct. App. 2009), trans. denied. Bonilla entered into a written agreement waiving his right to appeal. And at the plea hearing the trial court noted Bonilla "may" have waived his right to appeal his sentence. Bonilla, 907 N.E.2d at 589. However, the court proceeded to advise Bonilla of his right to appeal and asked if he understood that right. Id. Given the contradictory information Bonilla received at the plea hearing and the fact that Bonilla was not a native English speaker the Court of Appeals concluded that Bonilla did not waive his right to appeal his sentence. Id. at 590.

Taken together, our jurisprudence stands for the proposition that in Indiana, a defendant can waive his right to appeal an illegal sentence.[1] Our cases have recognized legitimate reasons for this proposition. "[D]efendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy. Striking a favorable bargain including a consecutive sentence the court might otherwise not have the ability to impose falls within this category." Lee 816 N.E.2d at 40 (quoting Davis v. State, 771 N.E.2d 647, 649 n.4 (Ind. 2002)). Cf. United States v. Woltmann, 610 F.3d 37, 40 (2d Cir. 2010) ("[T]he benefits of such waivers inure to

---

[1] This is by no means the rule in all jurisdictions. See, e.g., United States v. Andis, 333 F.3d 886, 891-92 (8th Cir. 2003) ("[A] defendant has the right to appeal an illegal sentence, even though there exists an otherwise valid waiver."); United States v. Elliott, 264 F.3d 1171, 1173 (10th Cir. 2001) (recognizing that "[a]ppellate waivers are subject to certain exceptions" and "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court") (citations omitted); People v. Bottenfield, 159 P.3d 643, 645 (Colo. Ct. App. 2006) (concluding "a defendant cannot waive the right to challenge an illegal sentence because there cannot be a valid agreement to an illegal sentence").

both government and the defendant alike, with the government receiving the benefit of reduced litigation, and the defendant receiving some certainty with respect to his liability and punishment." (quoting United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000)).  But in our cases enforcing illegal sentences, those sentences were explicitly provided for in the plea agreement, and the defendant benefitted from the plea.  See, e.g., Lee, 816 N.E.2d at 39-40 (upholding improper consecutive sentences, explicitly provided for in the plea agreement, where the State dismissed a habitual offender allegation in exchange); Stites, 829 N.E.2d at 528 (affirming imposition of illegal consecutive sentences where defendant "specifically agreed to the consecutive sentences in her plea agreement" and "[a]s part of the plea agreement the State agreed that it would not seek the death penalty"); Collins, 509 N.E.2d at 833 (finding no error where the defendant benefitted by receiving an illegally suspended sentence).  Cf. Sinn v. State, 609 N.E.2d 434, 435-36 (Ind. Ct. App. 1993), trans. denied (in the apparent absence of an appeal waiver, vacating consecutive sentences not authorized by statute even though the plea agreement explicitly called for the sentences to run consecutively).  In other words, our precedent supports the view that where a plea agreement provides for the illegality later challenged, a valid waiver contained therein will be upheld.

Several federal jurisdictions permit the appeal of an illegal sentence pursuant to a rule refusing enforcement of an "otherwise valid waiver [of appeal] if to do so would result in a miscarriage of justice." Andis, 333 F.3d at 891. See also United States v. Hahn, 359 F.3d 1315, 1327 (10th Cir. 2004), per curiam; United States v. De-La-Cruz Castro, 299 F.3d 5, 10 (1st Cir. 2002).  Considerations in assessing a "miscarriage of justice" vary by jurisdiction but may include "the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008) (quoting United States v. Cardona-Díaz, 524 F.3d 20, 23 (1st Cir. 2008). See also Hahn, 359 F.3d at 1325-1327 (employing the Andis court's three-pronged approach analyzing the scope of the waiver, the knowing and voluntary character of the waiver, and whether enforcement of the waiver would result in a miscarriage of justice, where miscarriage of justice may be found only in four specific situations and then subject to additional constraints).  Such an approach would undoubtedly have value in certain situations. See, e.g., Lee, 816 N.E.2d at 38 (agreeing that "we would not enforce

a sentence of death for jay walking simply because the sentence was the product of a plea agreement." (quoting Sinn, 609 N.E.2d at 436). While we agree that "allowing a defendant to waive appeal of any and every sentence imposed in violation of law would 'invite[ ] disrespect for the integrity of the courts,'" United States v. Ready, 82 F.3d 551, 556 (2d Cir. 1996) (quoting Wheat v. United States, 486 U.S. 153, 162 (1988)), the facts of the instant case do not require us to adopt the "miscarriage of justice" analysis.

Here—in contrast to Lee, Stites, and Collins—the plea agreement did not provide for an illegal sentence. We presume a trial judge "is aware of and knows the law." Dumas v. State, 803 N.E.2d 1113, 1121 (Ind. 2004). See also Moran v. State, 622 N.E.2d 157, 159 (Ind. 1993) (recognizing the "strong presumption" that the trial court "has acted correctly and has properly followed the applicable law"). And when entering a contract with the prosecutor, a defendant is entitled to presume that that trial court will order performance of the contract in compliance with the law. Cf. Ready, 82 F.3d at 559 ("[W]e construe the agreement against a general background understanding of legality. That is, we presume that both parties to the plea agreements contemplated that all promises made were legal, and that the non-contracting 'party' who implements the agreement (the district judge) will act legally in executing the agreement." (citing Walsh v. Schlecht, 429 U.S. 401, 408 (1977))). Indeed, "[p]lea agreements and appeal waivers rest on the basic assumption that a sentencing court will correctly understand the statutory scheme and sentencing guidelines that are to be utilized in sentencing a defendant." Hahn, 359 F.3d at 1330 (Lucero, J., concurring in part and dissenting in part). In other words, the "default rule" for plea agreements is that sentences will be determined and imposed legally, where there is no agreement otherwise.

Absent due process concerns to the contrary, when a defendant explicitly agrees to a particular sentence or a specific method of imposition of sentences, whether or not the sentence or method is authorized by the law, he cannot later appeal such sentence on the ground that it is illegal. See Lee, 816 N.E.2d at 40. In this case Crider made no such agreement. And in the absence of any such agreement, he was entitled to presume that the trial court would sentence him in accordance with the law. Crider's waiver of appeal in his plea agreement therefore applied only to sentences imposed in accordance with the law. Because the law does not permit

the imposition of consecutive habitual offender sentences and Crider did not agree to consecutive habitual offender sentences, his waiver of appeal is thus invalid and his habitual offender sentences must be ordered to run concurrently.

## Conclusion

We reverse in part the trial court's sentencing order and remand for resentencing in accordance with this opinion.

Dickson, C.J., and David, Massa and Rush, JJ., concur.