

FILED

Nov 13 2025, 11:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 25S-CR-294

## Kimberly R. Anderson,
*Appellant,*

—v—

## State of Indiana,
*Appellee.*

Argued: June 18, 2025 | Decided: November 13, 2025

Appeal from the Marion County Superior Court
No. 49D20-2401-F5-517
The Honorable Jennifer Harrison, Judge
The Honorable Steven Rubick, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-1358

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa and Molter concur.
Justice Goff concurs in the judgment with separate opinion.

**Slaughter, Justice.**

Criminal defendants have a constitutional right to appeal their sentences. But defendants can waive this right with a valid appeal waiver. Like any contract provision, an appeal waiver bars only those appeals within its scope. Under our precedent, even a comprehensive waiver that purports to foreclose all appeals cannot legally prevent a defendant from challenging an unbargained-for "illegal" sentence. This case addresses what qualifies as an illegal sentence. We hold that a sentence is illegal, and thus an appeal challenging it cannot be waived, only if it either is outside the prescribed statutory range or is unconstitutional. Here, the challenged sentence is neither of these things, so the waiver is valid, and the appeal must be dismissed.

I

In 2023, Kimberly Anderson stabbed her boyfriend with a boxcutter and threatened to kill him, prompting the State to charge her with three crimes: Level 5 felony domestic battery by means of a deadly weapon; Level 5 felony battery by means of a deadly weapon; and Level 6 felony intimidation. Shortly before her trial date, Anderson and the State entered into a plea agreement. As part of the agreement, Anderson pleaded guilty to two of the three charges: felony domestic battery and felony intimidation.

The plea agreement contained several terms. Among them, the State agreed to drop the Level 5 felony battery charge; it refrained from adding an additional charge of aggravated battery; and it did not seek a habitual-offender enhancement. The State also agreed to a maximum executed sentence of four years, with the exact number of years to be determined at the trial court's discretion. And, relevant here, the agreement included an appeal waiver:

> Defendant hereby waives the right to appeal any sentence imposed by the Court, including the right to seek appellate review of the sentence pursuant to Indiana Appellate Rule 7(B), so long as the Court sentences the defendant within the terms of this plea agreement.

Anderson initialed the provision and signed the agreement.

The trial court held a combined hearing at which it accepted Anderson's plea and imposed sentence. First, the court personally reviewed the plea agreement with Anderson and confirmed that she understood it. The court walked through each of the rights Anderson was waiving by pleading guilty. And it confirmed that Anderson had placed her initials next to each provision, including the appeal-waiver provision, "after reviewing those rights with your lawyer".

Both sides then presented argument and evidence about Anderson's sentence. As mitigating factors warranting a lesser sentence, Anderson pointed to her role as a caregiver for her elderly mother and her own struggles with bipolar disorder. For its part, the State argued that Anderson's criminal history and her premeditated attack were aggravating factors warranting a greater sentence. The State asked that Anderson be sentenced to four years executed with the Indiana Department of Correction and two years suspended to probation. Throughout the proceedings, the court observed, Anderson "made faces, mocking faces and faces of disbelief while the deputy prosecutor recited her impressions of the victim in this case. Ms. Anderson's facial expressions were not at all helpful to the case that she's pleading today."

After considering the arguments and the evidence, the court determined that "the aggravating circumstances outweigh the mitigating circumstances", and that "Ms. Anderson is in need of rehabilitation that can be best provided by a penal facility." The court then sentenced Anderson to three years executed with the department of correction and three years suspended to probation. After the hearing, the trial court, unprompted, told Anderson she had "a right to appeal the sentence imposed in this case, not the conviction, but you do have a right to appeal the sentence." In response, Anderson said she wanted to appeal, and she did.

In her appeal, Anderson argued that the trial court abused its sentencing discretion "by considering improper reasons and not considering significant mitigating evidence". The improper reasons, Anderson claimed, were the court's reliance on her facial expressions and its belief that she required rehabilitation in a penal facility. She also claimed that the court

erred in not assigning any mitigating status to her decision to plead guilty. She did not argue that the trial court's misstatement affected the appeal waiver's validity. She used the misstatement, instead, as evidence of the "limited scope" of her appeal waiver.

The State moved to dismiss the appeal, arguing that all of Anderson's arguments were subject to her appeal waiver. A divided appellate motions panel agreed and dismissed the appeal. Judge Weissmann dissented, believing that the dismissal motion should be held for the writing panel.

Anderson then sought transfer, which we grant today, ___ N.E.3d ___ (Ind. 2025), and we vacate the panel's dismissal order.

## II

As a threshold issue, we must consider whether Anderson's plea agreement bars her appeal. Anderson claims that her appellate arguments are not subject to the appeal waiver because she is alleging that her sentence is illegal. If she is right, her appeal is valid, for even a comprehensive appeal waiver, we have held, does not foreclose challenging an illegal sentence. But if she is wrong, her appeal cannot proceed.

Our opinion proceeds in two steps. First, we clarify how appellate courts review an appeal waiver's scope. In doing so, we resolve a split within our court of appeals and adopt the following standard: a sentence is not illegal, and thus can be waived for appellate review, unless it falls outside the prescribed statutory range or is unconstitutional. Second, applying our standard here, we hold that Anderson is not alleging that her sentence is illegal, only that the trial court abused its discretion in imposing sentence. Because the challenged sentence falls within the scope of her appeal waiver, we dismiss her appeal.

## A

As with any contract, the precise language of appeal waivers often varies widely, reflecting the multifaceted bargains that local prosecuting attorneys strike with criminal defendants. The disputed appeal waiver here is comprehensive. It bars Anderson from appealing "any sentence imposed by the Court . . . so long as the Court sentences the defendant

within the terms of this plea agreement". Anderson does not claim that this language is ambiguous, or that she did not enter into the agreement knowingly and voluntarily. She claims only that her appeal "raises concerns that fall outside the scope of the waiver provision."

In Part II.A, we summarize our own caselaw on appeal waivers; we analyze a current split within our court of appeals over what an illegal sentence means in the context of appeal waivers; and we resolve this split and pronounce our governing rule.

1

Appeal waivers in Indiana are nearly as prevalent as plea agreements; most agreements have such waivers. In recent years, we have issued several opinions establishing various rules about appeal waivers and appellate review of them. In *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008), we recognized the validity of appeal-waiver provisions, declaring that "[w]hen a defendant pleads guilty and agrees to a specific sentence, he waives his right to challenge the propriety of his sentence." Though *Creech* states the general rule, the rule is not absolute.

As the Supreme Court notes, "[a] valid and enforceable appeal waiver . . . only precludes challenges that fall within its scope." *Garza v. Idaho*, 586 U.S. 232, 238 (2019) (quoting *United States v. Hardman*, 778 F.3d 896, 899 (11th Cir. 2014)). This truism "follows from the fact that, '[a]lthough the analogy may not hold in all respects, plea bargains are essentially contracts.'" *Ibid.* (quoting *Puckett v. United States*, 556 U.S. 129, 137 (2009)). Appeal rights, in other words, are limited by the text and scope of the waiver. The broader the waiver, the fewer the appeal rights.

We recognized in *Crider v. State*, 984 N.E.2d 618, 619 (Ind. 2013), that an appeal waiver "is unenforceable where the sentence imposed is contrary to law and the Defendant did not bargain for the sentence." *Crider* clarified that a "contrary to law" sentence is tantamount to an "illegal" sentence, *id.* at 623, prompting the question: What is an "illegal" sentence in the context of an open plea, meaning a plea that does not specify a particular sentence? *Crider* did not define an illegal sentence. It simply compared the bar against an "illegal sentence" to a central legal tenet that

"[w]e presume a trial judge is aware of and knows the law." *Id.* at 624 (quotation omitted). In the context of plea agreements, *Crider* held that "when entering a contract with the prosecutor, a defendant is entitled to presume that [the] trial court will order performance of the contract in compliance with the law." *Ibid.* A "basic assumption" in all plea agreements and appeal waivers, we explained, is that "a sentencing court will correctly understand the statutory scheme and sentencing guidelines that are to be utilized in sentencing a defendant.'" *Id.* at 625 (quotation omitted).

After *Creech* and *Crider*, we addressed another aspect of appeal waivers in *Davis v. State*, 217 N.E.3d 1229 (Ind. 2023). There, we held that a defendant's argument that he did not "knowingly and voluntarily waive his right to appeal" must be raised in post-conviction proceedings. *Id.* at 1232. In doing so, we repeated that "contract law principles generally apply" to plea agreements. *Ibid.* Though *Davis* did not specifically address a sentence's legality, there we emphasized *Crider*'s holding that "some sentencing appeal issues are nonwaivable", such as "where the sentence imposed is contrary to law and the Defendant did not bargain for the sentence." *Id.* at 1236 n.3 (quoting *Crider*, 984 N.E.2d at 619).

Our precedent reveals two points relevant here. First, we have consistently recognized the enforceability of appeal waivers based on the contract principles underlying them. Second, despite this broad rule, there remain certain sentencing claims a defendant cannot waive, the most common of which (relevant here) is Anderson's claim that her sentence is "illegal". We consider, next, how courts define "illegality".

2

Anderson claims that an illegal sentence includes one where the trial court considered "improper reasons" and ignored "significant mitigating evidence." With this argument, Anderson wades into an ongoing split within our court of appeals over how to read *Crider* and its references to an "illegal" sentence. The split boils down to how narrowly or expansively to view a claim of illegality.

Like the panel below, another appellate panel has taken the narrow view that a sentence is "illegal" only if it falls outside the "statutory range for her crime". *Wihebrink v. State*, 181 N.E.3d 448, 451 (Ind. Ct. App. 2022), trans. denied. Relying on *Crider*, *Wihebrink* reasoned that the focus should be on whether the defendant's sentence was "authorized by law". *Ibid.* Indeed, it noted that *Crider* "nowhere . . . suggest[ed] that reliance on one or more invalid aggravators makes the sentence 'illegal' or 'contrary to law.'" *Ibid.* Otherwise, *Wihebrink* said, "the appeal waiver explicitly sanctioned in *Creech* would be largely gutted . . . as any defendant [with an open plea] could make such an argument." *Id.* at 452 (internal citations omitted).

In contrast to *Wihebrink*, Anderson invokes three other decisions from our court of appeals to support her expansive view of illegality. See *Haddock v. State*, 112 N.E.3d 763, 767 (Ind. Ct. App. 2018), trans. denied; see also *Fields v. State*, 162 N.E.3d 571, 576 (Ind. Ct. App. 2021), trans. denied; *Crouse v. State*, 158 N.E.3d 388, 393 (Ind. Ct. App. 2020). Anderson says these cases, all of which cite *Crider*, establish that a defendant may circumvent an appeal waiver by challenging "the sentencing process itself".

As our friend Justice Goff notes in his separate opinion, all four cases arose in a different procedural context—namely, "in the context of the court deciding whether the defendant was an 'eligible defendant' under Post-Conviction Rule 2". *Post*, at 7. Because Anderson does not seek a belated appeal under our post-conviction rules, we agree with our colleague that the cases she cites are procedurally distinct. Yet Anderson relies on the *Haddock* line of cases not for their procedural posture, but because she says their reasoning "supports [her] right to appeal in this situation." These cases, she argues, "held that a sentence based on improper aggravating factors is not imposed in accordance with law under *Crider* and falls outside an appeal waiver." We disagree. The *Haddock* line of cases does not hold that errors in sentencing procedure necessarily render a sentence illegal, and thus appealable, under *Crider*.

These rival views—represented by *Wihebrink*, on one hand, and the *Haddock* line of cases, on the other—point to the same language in *Crider* yet derive very different views of what *Crider* meant by an "illegal" sentence. We resolve this dispute next.

We hold that the better understanding of *Crider*, and the better policy outcome, limits when courts can ignore a freely bargained plea agreement due to a claimed sentencing error. We approve of *Wihebrink*'s reasoning and hold that a sentence is "illegal" only if it is outside the prescribed statutory range or is unconstitutional.

This approach comports with the legislature's overall sentencing scheme, which instructs that courts "may impose any sentence that is: (1) authorized by statute; and (2) permissible under the Constitution of the State of Indiana; regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind. Code § 35-38-1-7.1(d). This statute underscores that the legislature considers a sentence "illegal" only if it is not within the permitted range or violates the state constitution.

Anderson argues that her sentence is unconstitutional, and thus qualifies as "illegal", because of "due process concerns in the sentencing procedure". The trial court, she claims, "relied on improper factors and did not consider a significant mitigating factor." Her alleged constitutional defect does not suffice to avoid her appeal waiver. As other courts have recognized, there is no "general 'constitutional-argument exception' to waivers in plea agreements." *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014) (quoting *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000)). To the extent a trial court allegedly relied on "improper aggravators or fail[ed] to find proper mitigators, we review the sentence for an abuse of discretion, not for legality." *Wihebrink*, 181 N.E.3d at 452. In other words, an alleged defect in the trial court's sentencing discretion, including determining and applying aggravating and mitigating factors, does not amount to an unconstitutional, illegal sentence.

Some constitutional arguments, however, likely would circumvent an otherwise valid appeal waiver. Though we have never had to grapple with such arguments, the Seventh Circuit has identified a few. It has held, for example, that "an appeal waiver will not prevent a defendant from challenging . . . a sentence based on 'constitutionally impermissible criteria, such as race'" or the "deprivation of 'some minimum of civilized procedure' (such as if the parties stipulated to trial by twelve orangutans)".

*Adkins*, 743 F.3d at 192–93 (quoting *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005)). At oral argument, the State agreed that a sentence based on race would be appealable, notwithstanding a written appeal waiver, because "no one would ever expect something that illegal would be considered" by the sentencing court. To decide today's case, though, we need not explore further the scope or extent of such waiver-avoiding constitutional arguments. It is enough to say that Anderson's arguments do not suffice.

*Wihebrink* also closely aligns with what we held in *Crider*. There, the defendant claimed that the trial court wrongfully imposed consecutive sentences for offenses statutorily ineligible for consecutive sentences. *Crider*, 984 N.E.2d at 625. We held that the appeal waiver did not apply because the defendant never bargained for a sentence that exceeded what the statute authorized. The "illegality" addressed in *Crider* referred to a sentence that exceeded the statutory framework. Thus, it stretches *Crider* beyond its holding to say that a sentence is rendered illegal due to mere improper aggravators.

And, last, this approach vindicates an important principle associated with plea agreements, which is that both parties receive something of value by negotiating them. "[D]efendants often plead guilty and agree (among other things) to waive their right to appeal their sentence in exchange for a more lenient sentence." *Davis*, 217 N.E.3d at 1232. This exchange of mutual benefits between the parties occurred here. Through its plea agreement with Anderson, the State avoided the risk that a jury would vote to acquit her; it also avoided the expense of putting Anderson on trial, and, it hoped, the expense of defending an appeal. The key benefits for Anderson were a limited number of convictions and a more lenient sentence.

This mutuality of benefits militates in favor of enforcing plea agreements and, correspondingly, limiting when courts will find that policy reasons warrant ignoring such agreements. If an appeal waiver could be circumvented merely by claiming the trial judge improperly weighed or considered aggravators and mitigators, both parties would be deprived of the benefit of their bargain.

Having announced the governing legal standard, we next apply it to determine whether Anderson's appeal can proceed or must be dismissed.

B

"Because plea agreements are contracts, contract law principles generally apply." *Ibid*. Like any contract, we "begin with its plain language". *Berry v. State*, 10 N.E.3d 1243, 1247 (Ind. 2014). Any ambiguity is construed against the State, as the agreement's drafter. *Davis*, 217 N.E.3d at 1233. We review questions of contract interpretation anew, *Lake Imaging, LLC v. Franciscan All., Inc.*, 182 N.E.3d 203, 206 (Ind. 2022), giving no deference to the lower court.

Here, the plea agreement's terms are straightforward. Anderson agreed to an open plea—an unspecified sentence—with a cap of four years as an executed sentence. The trial court imposed a six-year sentence, divided equally between time executed in the department of correction (three years) and probation (three years). This three-year executed sentence is "within the terms" of the plea agreement, which imposes a sentencing cap of four years "executed".

Anderson responds in two ways. First, she argues that the plea agreement here "does not explicitly prohibit" challenges alleging an abuse of the trial court's discretion. We disagree. The text of the appeal waiver is clear and comprehensive. It prohibits Anderson from appealing "any sentence imposed by the Court . . . so long as the Court sentences the defendant within the terms of this plea agreement." The only reasonable interpretation of the agreement's far-reaching appeal waiver is that its broad scope includes Anderson's challenge here to the trial court's sentencing discretion.

Second, Anderson latches on to the trial court's misstatement that she could appeal her sentence as proof of the appeal waiver's "limited scope". Her reliance on extrinsic evidence of the agreement's purported meaning also fails. "Indiana follows 'the four corners rule' that 'extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction.'" *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528,

532 (Ind. 2006) (quoting *Hauck v. Second Nat'l Bank of Richmond*, 286 N.E.2d 852, 861 (Ind. Ct. App. 1972)). Applying this well-settled principle here, the trial court's misstatement about Anderson's appellate rights does not alter or affect her plea agreement's unambiguous meaning.

\*      \*      \*

For these reasons, we dismiss Anderson's appeal.

Rush, C.J., and Massa and Molter, JJ., concur.
Goff, J., concurs in the judgment with separate opinion.

ATTORNEYS FOR APPELLANT
Suzy St. John
Clinical Professor of Law

Jack Pitchford
Certified Legal Intern
Appellate Clinic
Indiana University Robert H. McKinney School of Law
Indianapolis, Indiana

Talisha R. Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Justin F. Roebel
Michelle H. Kazmierczak
Deputy Attorneys General
Office of Indiana Attorney General
Indianapolis, Indiana

**Goff, J., concurring in the judgment.**

In *Crider v. State*, this Court acknowledged that a defendant can waive the right to appeal an "illegal sentence," so long as he expressly agrees to such a sentence. 984 N.E.2d 618, 624–25 (Ind. 2013). But "in the absence of any such agreement," a defendant is "entitled to presume that the trial court would sentence him in accordance with the law." *Id.* at 625. In other words, there is an expectation "that sentences will be determined and imposed legally." *Id.* The question left unanswered in *Crider* is what, precisely, constitutes an "illegal" sentence. The Court today holds "that a sentence is illegal, and thus an appeal challenging it cannot be waived, only if it either is outside the prescribed statutory range or is unconstitutional." *Ante*, at 2. Because the defendant here alleges only that the trial court abused its discretion, the Court concludes that "the waiver is valid, and the appeal must be dismissed." *Id.*

In my view, the Court takes a much-too-narrow approach. Rather than confining our review of illegality to the sentence itself, I would allow defendants like the one here to raise procedural, abuse-of-discretion claims challenging the legality of the sentence on direct appeal. And to avoid opening the floodgates to virtually all sentencing claims, the State can use precise, all-inclusive waiver language in their plea agreements, or offer the defendant a specific sentence in a plea agreement, leaving the trial court with no room to abuse its sentencing discretion. Because I find no merit in the defendant's abuse-of-sentencing discretion claims here, I ultimately concur in the Court's judgment.

## I. Anderson's plea agreement should not preclude her sentencing appeal.

Anderson acknowledges that her plea agreement "prohibits her from challenging the sentence itself." Appellant's Br. at 18. She argues instead (A) that, because the plain language of her appeal waiver covers only challenges to "any sentence imposed" and to sentencing review under "Appellate Rule 7(B)," her challenge to the "trial court's *sentencing procedure*" falls outside the "limited scope" of her appeal waiver; and (B)

that, even if her claims fall within the waiver's scope, her sentence was "not imposed in accordance with the law" as *Crider* requires. Pet. to Trans. at 6–9 (emphasis added).

I find merit in both these arguments.

## A. Anderson's sentencing claim falls outside the scope of her waiver's plain language.

Anderson first argues that, because her appeal waiver covers only challenges to "any sentence imposed" and to sentencing review under "Appellate Rule 7(B)," her challenge to the "trial court's *sentencing procedure*" falls outside the "limited scope" of her appeal waiver. *Id.* at 6–7 (emphasis added). The Court gives this argument short shrift, finding the appeal waiver's text "clear and comprehensive" and summarily concluding that the "only reasonable interpretation of the agreement's far-reaching appeal waiver is that its broad scope includes Anderson's challenge here to the trial court's sentencing discretion." *Ante*, at 10.

I respectfully disagree.

Plea agreements are contractual in nature. *State v. Smith*, 71 N.E.3d 368, 370 (Ind. 2017). As such, principles of contract interpretation guide our analysis, "beginning with the agreement's plain language" and leading us to determine the "intent of the parties at the time the plea was entered." *Id.* A "valid and enforceable appeal waiver precludes review only of those challenges that fall within its scope." *Wihebrink v. State*, 192 N.E.3d 167, 168 (Ind. 2022) (David, J., dissenting from denial of transfer) (citing *Garza v. Idaho*, 586 U.S. 232, 238 (2019)). If the terms of the agreement are unambiguous, the Court will apply them accordingly. *Smith*, 71 N.E.3d at 371. But if the terms are ambiguous, the Court construes the ambiguity against the State as the agreement's drafter. *Davis v. State*, 217 N.E.3d 1229, 1233 (Ind. 2023), *as modified* (Oct. 3, 2023).

Under the plea agreement here, Anderson waived the "right to appeal any sentence imposed by the court, including the right to seek appellate review of the sentence pursuant to Indiana Appellate Rule 7(B)." App. Vol. 2, p. 75.

On first impression, the broad, sweeping language of this waiver seems to unambiguously encompass Anderson's procedural claim. The purpose of a sentencing appeal is essentially twofold: it gives the defendant a chance (1) to "ensure that a sentence is not imposed in reliance on reasons that are legally improper or unsupported by the record, nor in disregard of reasons that are clearly supported by the record"; and (2) to "leaven the outliers" under a reviewing court's authority to revise "inappropriate" sentences. *Davis*, 217 N.E.3d at 1238 (Goff, J., dissenting) (internal citation and quotation marks omitted). Though the plea agreement here expressly bars Anderson's right to seek relief only under the latter of these two circumstances, its use of the word "including" suggests the waiver isn't limited to barring claims for 7(B) relief—*i.e.*, it also bars any procedural, abuse-of-discretion claims Anderson may raise.

On the other hand, the language of the agreement could be read to support Anderson's argument that the waiver covers *only* challenges to "any sentence imposed," *not* the court's procedure for reaching that sentence. And, arguably, the waiver's reference to Appellate Rule 7(B) doesn't change this narrow reading of the waiver's scope. Under that Rule, an appellant challenges not the trial court's sentencing procedure (as Anderson does), but, rather, the appropriateness of the sentence itself. Indeed, the Rule vests in an appellate court the authority to independently review and revise a sentence it deems inappropriate, "even where the trial court has been meticulous in following the proper procedure in imposing a sentence." *Childress v. State*, 848 N.E.2d 1073, 1079–80 (Ind. 2006). In short, the waiver's express reference to Appellate Rule 7(B) could reasonably support the conclusion that the State intended to limit only Anderson's right to appeal the merits of the sentence itself. *Cf. Archer v. State*, 81 N.E.3d 212, 216 (Ind. 2017) (holding that the defendant had not waived her right to appeal the amount of the restitution order because the plea agreement left the amount of restitution blank and specified no mechanism for determining the amount).

Given these competing yet equally legitimate readings of the waiver provision, I would find it ambiguous and, thus, construe it against the State, allowing Anderson to proceed with her appeal. *See Davis*, 217 N.E.3d at 1233.

Interpreting the waiver narrowly to encompass only challenges to the sentence itself (rather than the trial court's procedure in reaching that sentence) aligns with a basic principle of contract interpretation: that a court "will not add tacit terms into the parties' express, agreed-upon ones." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 756 (Ind. 2018). If the parties here had intended the waiver to preclude challenges to both the sentence and the sentencing procedure, "they could have said so." *See id.* In fact, the State *has* been so explicit in drafting waivers in other cases. Unlike here, for example, the appeal waiver in *Wihebrink v. State* covered challenges to the "sentence imposed by the court" as well as "challenges for abuse of discretion, challenges to the trial court's sentencing statement, and challenges to the appropriateness of the sentence pursuant to Indiana Appellate Rule 7(B)." 181 N.E.3d 448, 450 (Ind. Ct. App. 2022), *trans. denied*; *see also Vaughn v. State*, No. 22A-CR-3009, 2023 WL 6785816, at *1 (Ind. Ct. App. Oct. 13, 2023) (mem.) (addressing an appeal waiver that expressly barred "challenges for abuse of discretion, challenges to the trial court's sentencing statement," and Appellate Rule 7(B) challenges) (brackets, citation, and internal quotation marks omitted).

## B. The Court takes a much-too-narrow approach to defining an "illegal" sentence.

Anderson next argues that, because it rests on arbitrary reasons or reasons unsupported by the evidence, and because it fails to reflect "significant mitigating evidence," her sentence was not "imposed in accordance with the law," as *Crider* requires. Pet. to Trans. at 9; Appellant's Br. at 9, 20–21 (quoting 984 N.E.2d at 625).

In *Crider*, this Court acknowledged that a defendant "can waive his right to appeal" an "illegal sentence," so long as he expressly agrees to such a sentence. 984 N.E.2d at 623. But "in the absence of any such agreement," the Court concluded, a defendant is "entitled to presume that the trial court would sentence him in accordance with the law." *Id.* at 625. In other words, there is an expectation "that sentences will be determined and imposed legally." *Id.*

As the Court here points out, the decision in "*Crider* did not define an illegal sentence," prompting an "ongoing split" within our Court of Appeals over how broadly or narrowly to review a claim of illegality. *Ante*, at 5, 6. *Compare Crouse v. State*, 158 N.E.3d 388, 390, 393 (Ind. Ct. App. 2020) (adopting a broad view of illegality to include improper "sentencing procedures and guidelines"), *with Wihebrink*, 181 N.E.3d at 452 (interpreting *Crider* as applying not to procedural, abuse-of-discretion claims but, rather, *only* to sentences that are per se illegal). The Court resolves this split by adopting the narrow approach to illegality in *Wihebrink*, holding "that a sentence is illegal, and thus an appeal challenging it cannot be waived, only if it either is outside the prescribed statutory range or is unconstitutional." *Ante*, at 2, 8. Such an approach, the Court explains, "comports with the legislature's overall sentencing scheme," aligns with the Court's decision in *Crider*, and "vindicates" the principle that "both parties receive something of value by negotiating" plea agreements. *Id.* at 8–9.

In my view, the Court takes a much-too-narrow approach.

To begin with, language in the *Crider* opinion itself suggests that the Court there may have been concerned with illegal sentencing *procedure*, not just sentences that are per se illegal. *See Crider*, 984 N.E.2d at 625 (concluding that a defendant is "entitled to presume that the *trial court would sentence* him in accordance with the law") (emphasis added); *id.* (citing a defendant's expectation "that *sentences will be determined* and imposed legally") (emphasis added).

Second, an abuse of sentencing discretion and an "illegal" sentence often go hand-in-hand. *See Anglemyer v. State*, 868 N.E.2d 482, 490–91 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007) (observing that a trial court may abuse its sentencing discretion by, among other things, offering reasons deemed "improper as a matter of law"). In other words, an abuse of sentencing discretion may very well result in an illegal sentence. For example, a trial court may not consider an aggravating factor that constitutes a material element of an offense. *Johnson v. State*, 687 N.E.2d 345, 347 (Ind. 1997). Consecutive sentences based *solely* on such an improper aggravator *would* be illegal, "because consecutive sentences

cannot be imposed without at least one aggravator." *Crouse*, 158 N.E.3d at 395–96 (Vaidik, J., concurring in result). *See also, e.g., Bell v. State*, 59 N.E.3d 959, 962, 964, 965 (Ind. 2016) (finding the trial court's insufficient inquiry into defendant's ability to pay restitution was abuse of discretion resulting in an "illegal sentence").

Third (and relatedly), a trial court's abuse of sentencing discretion—whether based on the finding of improper aggravators or the failure to find proper mitigators—may in fact result in a "sentence that exceeds statutory guidelines." *See Wihebrink*, 181 N.E.3d at 452. Indeed, while a sentencing court generally has broad discretion to consider a variety of mitigating and aggravating circumstances, there are some factors barred from consideration by statute. For example, a trial court's rejection of a proposed plea agreement bars the admission of that agreement, along with any related verbal or written communications, into evidence "at the trial of the case." Ind. Code § 35-35-3-4. The code similarly bars the admission of a rejected or withdrawn guilty plea into evidence "in any criminal, civil, or administrative proceeding." I.C. § 35-35-1-4(d). These statutory bars to the admission of privileged plea negotiations apply to the defendant's criminal trial as well as his or her sentencing proceeding. *See Hensley v. State*, 573 N.E.2d 913, 917 (Ind. Ct. App. 1991), *trans. denied*.

Under the Court's holding today, an appeal waiver may stand so long as the sentence itself wasn't illegal, even if a sentencing court improperly considered, as an aggravating factor, certain damning statements made during privileged plea negotiations that were rejected or withdrawn. Ironically, this would have the perverse effect of discouraging defendants from participating in the plea-bargaining process "for fear that potentially damning statements could later come back to haunt them." *See Mundt v. State*, 612 N.E.2d 566, 568 (Ind. Ct. App. 1993), *trans. denied*.

To be sure, the concern raised in *Wihebrink* is a legitimate one: If "a defendant who waived the right to appeal their sentence was allowed to appeal on the ground that the trial court found improper aggravators or failed to find proper mitigators, the appeal waiver explicitly sanctioned in *Creech* would be largely gutted in those cases where a defendant does not agree to a specific sentence." 181 N.E.3d at 452. But there are ways to

avoid such a result without confining an appeal waiver to a sentence that is either unconstitutional or falls "outside the prescribed statutory range." *See ante*, at 2. As Judge Vaidik, the author of *Wihebrink*, wrote in her separate concurring opinion in *Crouse*, "a defendant should be required to identify a *specific, plausible theory of illegality*." 158 N.E.3d at 395 (Vaidik, J., concurring in result) (emphasis added). Of course, even the smallest of procedural anomalies in the sentencing process could arguably support such a theory, allowing all but the most frivolous of claims to proceed on appeal. But the State can avoid this by doing one of two things: (1) using precise, all-inclusive waiver language like in *Wihebrink*; or (2) offering the defendant a specific sentence in a plea agreement, leaving the trial court with no room to abuse its sentencing discretion. *See* Sarah Faulkner, Note, *"Unwaivering" Justice: How Indiana Should Balance Fairness and Finality by Limiting Waivers of Sentence Appeals*, 58 Ind. L. Rev. 637, 656 (2025).

### C. The Court's opinion should not be read as disapproving the holding in *Haddock*.

In resolving the Court of Appeals' split over how to interpret the scope of "illegality," the Court approves of *Wihebrink*'s reasoning while rejecting the purportedly expansive view in *Haddock v. State*, 112 N.E.3d 763 (Ind. Ct. App. 2018), *trans. denied*. *Ante*, at 7, 8. To be clear, *Haddock* (and its progeny) arose in the context of the court deciding whether the defendant was an "eligible defendant" under Post-Conviction Rule 2 (or PCR 2)—*i.e.*, whether the defendant would have had "the right to challenge on direct appeal [their] conviction or sentence" but for their failure to do so in a timely manner. Ind. Post-Conviction Rule 2. The "focus" of a PCR 2 proceeding "is whether a defendant should be granted permission to file a belated notice of appeal," limiting the inquiry to "the defendant's lack of fault and his diligence to make that determination." *Hill v. State*, 960 N.E.2d 141, 146 (Ind. 2012). The "underlying merits of an appeal," on the other hand, "have no bearing on the question of restoring fundamental appellate rights where they have been wrongfully denied." *Gallagher v. State*, 410 N.E.2d 1290, 1292–93 (Ind. 1980).

And that's precisely the approach taken in *Haddock*. Rather than requiring the defendant to argue the merits of his putative belated appeal at the PCR 2 stage, thus leaving undecided the question of whether his claim fell beyond the scope of his appeal waiver, the court simply held that, as an "eligible defendant," he "would have had the right to raise in a timely appeal the issue of whether his sentence is illegal." 112 N.E.3d at 767. *Accord Fields v. State*, 162 N.E.3d 571, 573, 576 (Ind. Ct. App. 2021) (simply holding that, despite "a waiver of appeal provision in his plea agreement," the defendant was an "eligible defendant" under PCR 2 who "would have had the right to raise" his sentencing claim "in a timely appeal"), *trans. denied*.[1]

Nothing in the Court's opinion, as I read it, disapproves of the holding in *Haddock*. Thus, in the context of a PCR 2 proceeding, a defendant should still be able to raise the issue of whether his sentence was illegal, *regardless* of the underlying merits of the belated appeal. *See Gallagher*, 410 N.E.2d at 1292–93; P-C. R. 2(1)(a), (2)(a) (imposing no requirement that a defendant show a potentially meritorious issue available on appeal). *Cf. Crouse*, 158 N.E.3d at 396 (Vaidik, J., concurring in result) (concluding that the trial court properly allowed the defendant to pursue his belated appeal, despite the absence of an illegal sentence, because his "theory was at least plausible").

---

[1] To the extent that *Crouse* and *Wihebrink* went further by addressing the defendants' sentencing arguments on the merits, I would find those cases wrongly decided. *See Crouse v. State*, 158 N.E.3d 388, 395 (Ind. Ct. App. 2020) (holding that the defendant was an "eligible defendant" under PCR 2 but then turning to "the merits of Crouse's sentencing argument" and concluding that "the trial court did not abuse its discretion"); *Wihebrink v. State*, 181 N.E.3d 448, 452 (Ind. Ct. App. 2022) (holding that, because her sentence was not illegal under *Crider*, defendant had no right to challenge her sentence on direct appeal and, thus, "she is not an 'eligible defendant' under Post-Conviction Rule 2"), *trans. denied*.

## II. Anderson's abuse-of-discretion claims fail on the merits.

Having concluded that Anderson should be able to appeal her claims, I now turn to the merits of those claims.

A trial court may abuse its sentencing discretion in several ways: (1) by "failing to enter a sentencing statement at all"; (2) by entering a sentencing statement, unsupported by the record, "that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any"; (3) by omitting reasons from its sentencing statement that are "clearly supported by the record and advanced for consideration"; or (4) by offering reasons deemed "improper as a matter of law." *Anglemyer*, 868 N.E.2d at 490–91.

Here, Anderson argues that the trial court abused its discretion (1) by improperly considering her facial expressions, without evidentiary support, as an aggravating factor; (2) by failing to consider her guilty plea, despite binding precedent requiring its consideration as a mitigating factor; and (3) by finding she needed rehabilitation in a penal facility without a proper legal basis. Appellant's Br. at 10; Pet. to Trans. at 7–8.

The first of these claims lacks merit. At sentencing, the court observed that "Anderson's facial expressions were not at all helpful to the case that she's pleading today." Tr. Vol. 2, p. 41. Nowhere in the record is it obvious that the trial court cited Anderson's facial expressions as an aggravating factor (*e.g.*, as an expressed lack of remorse). *See id.* And Anderson herself acknowledges that it's "unclear what the court intended by its statements." Appellant Br. at 12.

Anderson's second claim—that the trial court abused its discretion by disregarding her guilty plea as a mitigating factor—may have some merit. A guilty plea generally shows a defendant's "acceptance of responsibility for the crime and extends a benefit to the State and to the victim or the victim's family by avoiding a full-blown trial." *Francis v. State*, 817 N.E.2d 235, 237–38 (Ind. 2004). As such, a guilty plea deserves at least "some" mitigating weight. *Anglemyer*, 875 N.E.2d at 220 (internal citation and quotation marks omitted). Here, Anderson arguably extended a

substantial benefit to the state while gaining only a modest benefit in return: she pled guilty just a few months after charges were filed, conserving judicial and prosecutorial resources; she spared the victim from having to testify, which the State acknowledged was in the "best interest" of the victim, Tr. Vol. 2, pp. 36, 37; and she gained little from the dismissal of the battery charge since it was inherently included in the domestic-battery charge to which she pled guilty. Still, though her guilty plea is "clearly supported by the record," there's nothing to suggest—or at least Anderson doesn't argue—that she "advanced [her guilty plea] for consideration" by the court at sentencing. *See Anglemyer*, 868 N.E.2d at 490–91. *Cf. Koch v. State*, 952 N.E.2d 359, 375 (Ind. Ct. App. 2011) (trial court did not err by failing to find defendant's mental illness to be a mitigator where defendant did not raise it at the sentencing hearing), *trans. denied*.

Finally, Anderson's third claim—that the trial court abused its discretion by finding she needed rehabilitation in a penal facility without a proper legal basis—stands on her argument that (a) it was an improper aggravator given its omission from the criminal code; and (b) the trial court offered no specific or individualized statement of why she needed such treatment. Appellant's Br. at 14–16. These arguments lack merit. Even if the criminal code no longer references a defendant's need for rehabilitation in a penal facility as an aggravating factor, it's questionable whether the court cited it for such purposes. In fact, the record suggests otherwise. *See* Tr. Vol. 2, p. 42 (citing Anderson's need for rehabilitation in a "penal facility" *after* weighing the aggravating and mitigating circumstances). What's more, the precedent on which Anderson relies holds that a trial court must offer a specific statement of why such treatment is needed only when it's used as an aggravator. *See Allen v. State*, 722 N.E.2d 1246, 1258 (Ind. Ct. App. 2000) (citation omitted).

In short, the only plausible claim Anderson raises is that the trial court abused its discretion by disregarding her guilty plea as a mitigating factor. But even then, there's nothing to show that she advanced that claim for consideration by the trial court, even if it were clearly supported by the record. Accordingly, I find no merit in Anderson's abuse-of-sentencing discretion claims.

# Conclusion

For the reasons above, I concur only in the Court's judgment.