*Pursuant to Indiana Appellate Rule 65(E), the trial court and parties shall not take any action in reliance upon this opinion until it is certified.*




FILED

Jun 29 2026, 2:42 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 26S-CR-208

## Jada Sha'nel Monroe,
*Appellant/Defendant,*

—v—

## State of Indiana,
*Appellee/Plaintiff.*

---

Argued: February 3, 2026 | Decided: June 29, 2026

Appeal from the Porter Superior Court
No. 64D01-2306-MR-5623
The Honorable David P. Matsey, Judge Pro Tem

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-2812

---

### Opinion by Justice Molter

Chief Justice Rush and Justices Massa and Slaughter concur.
Justice Goff dissents with separate opinion.

**Molter, Justice.**

When a defendant pleads guilty, they cannot challenge their conviction through a direct appeal; they must instead pursue post-conviction relief. *Tumulty v. State*, 666 N.E.2d 394, 395–96 (Ind. 1996). We grant transfer to revisit whether that rule should apply when a defendant pleads guilty to multiple counts but appeals arguing that double jeopardy requires vacating a lesser included conviction. And we conclude we don't need to deviate from our rule because other precedents already chart an alternate route to a direct appeal: A defendant can move to withdraw their plea (only as to the lesser included offense), include a request that the trial court vacate the lesser included conviction, and then directly appeal the denial of that motion.

## Facts and Procedural History

The State charged Jada Monroe with three counts: (1) murder; (2) felony murder (murder during a robbery); and (3) robbery resulting in serious bodily injury. Monroe pleaded guilty to all the counts without a plea agreement, and based on double jeopardy concerns, the parties agreed the court should "merge" the murder and felony murder counts. Tr. Vol. 2 at 3. By "merge," the parties meant the judge would enter a judgment of conviction on the murder count but not the felony murder count. The judge explained at the change-of-plea hearing that Monroe would "plead guilty to three counts" while being "sentenced in regard to two of those." *Id.* at 12. And then at sentencing, the State again agreed that the felony murder was "an included offense of murder," so the felony murder should be "vacated" to avoid a double jeopardy violation. App. Vol. 2 at 86–87 (underlining and capitalization omitted). But then Monroe went a step further and argued the robbery resulting in serious bodily injury conviction should be vacated on double jeopardy grounds too. Rejecting that argument, the trial court entered a final judgment of conviction on the murder and robbery counts, but not the felony murder count.

Monroe appealed and reasserted the double jeopardy argument, but the Court of Appeals affirmed. It explained that our Court "has long held

that 'it is well-established that a defendant who has pleaded guilty may not challenge the validity of his or her convictions on direct appeal.'" *Monroe v. State*, No. 24A-CR-2812, 2025 WL 1779332, at *2 (Ind. Ct. App. June 27, 2025) (mem.) (brackets omitted) (quoting *McDonald v. State*, 179 N.E.3d 463, 464 (Ind. 2022) (per curiam)). So, the court reasoned, while Monroe "may choose to seek post-conviction relief at a later date, she may not now challenge the validity of her convictions under Indiana double jeopardy law." *Id.*

Monroe then petitioned for transfer to our Court. The petition argued, among other things, that we should grant transfer to consider whether to "overrule [our] prior precedent and permit defendants that plead guilty to the charging document without the benefit of any agreement to challenge their conviction on double jeopardy grounds on direct appeal since they have the right to presume that the trial court will follow the law." Pet. to Trans. at 8. We now grant transfer, thus vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Whether a defendant can directly appeal a conviction following a guilty plea is a purely legal question that we consider de novo. *Ortiz v. State*, 278 N.E.3d 1151, 1155 (Ind. 2026).

## Discussion and Decision

The seminal case for the rule prohibiting a direct appeal following a guilty plea is *Tumulty v. State*, 666 N.E.2d 394 (Ind. 1996). In that case, the defendant pleaded guilty without a plea agreement to criminal deviate conduct, two counts of battery, and being a habitual offender. He then appealed and argued "there was no factual basis in support of" the habitual offender charge. *Id.* at 395. Our Court affirmed based on the "long-standing prohibition against challenging a guilty plea by direct appeal." *Id.* And we explained that the appropriate avenue to challenge the conviction was instead through post-conviction relief. *Id.* at 396.

There are several reasons for the rule. One is that post-conviction relief proceedings facilitate factual development that is not available through a direct appeal. *Id.* Another is the concern for finality, since "the plea as a legal act brings to a close the dispute between the parties, much as settling civil parties do by submitting an agreed judgment." *Id.* Yet another reason is that nearly all criminal cases resolve through a guilty plea, and allowing a direct appeal after the plea would have "the potential to multiply dramatically the caseload in the appellate courts by offering appeals to thousands of admitted felons." *Id.* And still another reason is that imposing a clear, straightforward rule for resolving the vast majority of cases yields a more efficient judicial system, "the benefit of most bright line tests." *Mayo v. State*, 681 N.E.2d 689, 695 (Ind. 1997) (Shepard, C.J., concurring).

We've said this rule applies to double jeopardy claims. *Hayes v. State*, 906 N.E.2d 819, 821 (Ind. 2009); *Mapp v. State*, 770 N.E.2d 332, 333–35 (Ind. 2002). But Monroe urges us to revisit that precedent and instead allow defendants who "plead guilty to the charging document without the benefit of any agreement to challenge their conviction on double jeopardy grounds on direct appeal since they have the right to presume that the trial court will follow the law." Pet. to Trans. at 8. The logic of Monroe's argument is compelling. Just as the defendant should expect the judge will exercise sentencing discretion consistent with the law, *Crider v. State*, 984 N.E.2d 618, 625 (Ind. 2013), the defendant should expect the judge will follow double jeopardy law when deciding which convictions to enter. And when the judge fails either of those expectations, there should be relief.

Still, there is no need to revisit cases like *Tumulty*, *Hayes*, and *Mapp* because our precedent already offers an alternate route to a direct appeal that subsumes Monroe's proposed rule. We've held that those cases do not bar a direct appeal of an order denying a motion to withdraw a guilty plea. *Mapp*, 770 N.E.2d at 334 n.1; *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001). Just as *Tumulty*'s rule applies to double jeopardy arguments, so too do the rule's limits.

Thus, when a trial court mistakenly enters rather than vacates a judgment of conviction on a lesser included offense following a guilty plea, and the defendant did not agree to that through a plea agreement establishing which convictions would be entered or subject to sentencing, the defendant should move to withdraw the guilty plea. The motion should be limited to the guilty plea on only the lesser included offense, and the motion should also ask the trial court to vacate only that conviction.[1] *See* Ind. Code § 35-38-1-6.

Whether before or after sentencing, a court must permit the defendant to withdraw a guilty plea "whenever the defendant proves the withdrawal of the plea is necessary to correct a manifest injustice." I.C. § 35-35-1-4(b) (before sentencing); I.C. § 35-35-1-4(c) (same standard after sentencing).[2] The "withdrawal of the plea is necessary to correct a manifest injustice whenever . . . the plea and judgment of conviction are void or voidable." I.C. § 35-35-1-4(c). A "voidable judgment" is one that "although seemingly valid, is defective in some material way," especially "a judgment that, although rendered by a court having jurisdiction, is irregular or erroneous." *Judgment*, Black's Law Dictionary (12th ed. 2024). A materially defective judgment would include one that runs afoul of double jeopardy protections. *See A.W. v. State*, 229 N.E.3d 1060, 1073 (Ind. 2024) (holding that "the juvenile court's multiple adjudications violate the substantive prohibition against double jeopardy, and the adjudication that A.W. committed 'dangerous possession of a firearm' must be vacated").

It is the defendant's burden as the movant, and then later as the appellant, to demonstrate a double jeopardy violation (putting the onus

---

[1] Indiana Criminal Rule 3.3(C)(1) provides that a "defendant may plead guilty to all charged offenses without a plea agreement or to at least one of the charged offenses pursuant to a plea agreement negotiated with the state." When a defendant moves to withdraw a guilty plea as to the lesser included offense based on double jeopardy, the only potential relief is to vacate the conviction on that count; the defendant cannot move to withdraw for the purpose of pleading guilty to some counts and not guilty to others.

[2] A post-sentencing motion is "treated by the court as a petition for postconviction relief." I.C. § 35-35-1-4(c).

on the defendant to develop an adequate factual record for appellate review). *Coomer v. State*, 652 N.E.2d 60, 61–62 (Ind. 1995) (movant); *Johnson v. State*, 734 N.E.2d 242, 245 (Ind. 2000) (appellant). If the trial judge denies a defendant's motion to withdraw the plea, the appellate court will review that decision for an abuse of discretion. *Brightman*, 758 N.E.2d at 44. And "[a] trial court exceeds its discretion when its decision is unlawful, illogical, or otherwise unreasonable." *Expert Pool Builders, LLC v. Vangundy*, 224 N.E.3d 309, 312 (Ind. 2024).

Because a double jeopardy violation would qualify as a manifest injustice, the questions of whether there was a double jeopardy violation and whether there was an abuse of discretion would be one and the same. If there was a double jeopardy violation, then there would also be an abuse of discretion in denying the motion, and the appellate court should reverse and remand with instructions to grant the motion and vacate the lesser included conviction. On the other hand, if there was no double jeopardy violation, then there was no abuse of discretion, and the appellate court should affirm.

This gets to the same place as Monroe's proposal, which is to allow "defendants that plead guilty to the charging document without the benefit of any agreement to challenge their conviction on double jeopardy grounds on direct appeal." Pet. to Trans. at 8. But first funneling these claims through a motion to withdraw offers two benefits. One is less disruption to our precedents, as this is the framework that *Tumulty* and then *Brightman* built. And the other benefit is that a motion to withdraw creates an opportunity to develop a more robust factual record in the trial court, which is why we held in *Brightman* that *Tumulty* does not bar a direct appeal challenging an order denying a motion to withdraw a guilty plea. *Brightman*, 758 N.E.2d at 44 (distinguishing *Tumulty* in part because "the trial court heard evidence on the motion, reviewed the claim, and rejected it"). Indeed, if the defendant files the motion after sentencing, the trial court must treat the motion as a petition for post-conviction relief. I.C. § 35-35-1-4(c).

In this case, Monroe did not file a motion to withdraw the guilty plea as to a lesser included conviction. A direct appeal is therefore unavailable, and any remedy must come through post-conviction relief.

# Conclusion

In sum, we decline Monroe's invitation to adjust our limits on direct appeals. Because Monroe did not move to withdraw the guilty plea on the robbery conviction, we hold the conviction cannot be challenged through a direct appeal, and we summarily affirm the Court of Appeals' other holdings rejecting Monroe's challenges to the sentence.

Rush, C.J., and Massa and Slaughter, JJ., concur.
Goff, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT
Benjamen W. Murphy
Griffith, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Angela N. Sanchez
Chief Counsel of Appeals

Kelly A. Loy
Section Chief, Criminal Appeals
Indianapolis, Indiana

## Goff, J., dissenting.

Under our long-standing rule in *Tumulty v. State*, a guilty plea waives the right to challenge on direct appeal a conviction on double-jeopardy grounds, requiring the defendant, with certain exceptions, to raise his claim in a petition for post-conviction relief.[1] Three principal reasons motivate this rule: the frequent insufficiency of facts adduced at a guilty-plea hearing to resolve a fact-sensitive double-jeopardy claim on direct appeal, the need to ensure finality of the dispute, and the importance of promoting judicial economy by limiting the appellate caseload. The defendant here urges us to reconsider *Tumulty*'s application in cases where, like hers, a defendant pleads guilty without the benefit of a plea agreement with the State, and the existing record suffices for an appellate court to resolve the double-jeopardy claim. Strict adherence to *Tumulty* in those circumstances, she contends, undermines its policies of finality and judicial economy.

The Court today finds "no need to revisit" *Tumulty* "because our precedent already offers an alternate route to a direct appeal" for guilty-plea defendants who question the propriety of the State's charges: the motion to withdraw a guilty plea.[2] Although I agree that this procedure will suffice in most cases,[3] I see no need to treat the *Tumulty* rule as so strict and inflexible as to preclude the relief sought here. After all, the

---

[1] *See* 666 N.E.2d 394, 395, 396 (Ind. 1996).

[2] *Ante*, at 4.

[3] I do, however, take issue with the Court's bifurcated approach to these motions. In Indiana, a defendant is not entitled to plead guilty to fewer than all charges, absent an agreement with the State, and then proceed to trial on the remaining charges. *Helvie v. State*, 248 N.E.3d 615, 616–17 (Ind. Ct. App. 2024) (explaining that Criminal Rule 3.3(C)(1)'s failure to address such circumstances prohibits the procedure), *trans. denied*. Indiana courts have characterized the open guilty plea as an "all-or-nothing" decision, leaving the defendant with no discretion to "pick and choose" the charges he decides to litigate. *Newsome v. State*, 797 N.E.2d 293, 297 (Ind. Ct. App. 2003) (quoting trial court), *trans. denied*. If Indiana courts prohibit partial pleas in the absence of a plea agreement, I see no need for a defendant to limit his motion to withdraw "to the guilty plea on only the lesser included offense." *See ante*, at 5. In my view, it should be all or nothing. *Cf. Davis v. State*, 217 N.E.3d 1229, 1233–34 (Ind. 2023), *as modified* (Oct. 3, 2023) (declaring that plea agreements must be taken "all or nothing").

alternate route endorsed by the Court is itself an exception to the *Tumulty* rule.[4] In my view, a guilty-plea defendant should be able to raise a double-jeopardy claim on direct appeal if the alleged violation arose after entry of the guilty plea, the defendant never agreed to the alleged violation, an appellate court can resolve the claim based on the existing record, and there's no legitimate dispute over the factual basis supporting the conviction. And because the circumstances here meet these criteria, I would remand to the Court of Appeals to consider the defendant's double-jeopardy claim on the merits.

# Discussion

The State charged Jada Monroe with murder; felony murder (murder in the perpetration of robbery); and robbery resulting in serious bodily injury, a Level 2 felony (or F2 robbery for short). About two weeks before her jury trial, Monroe pled guilty to all counts without the benefit of a written plea agreement. Then, at her change-of-plea hearing, she advised the trial court that the parties had agreed to "merge" the felony-murder count with the murder count. Tr. Vol. 2, p. 3. The trial court acknowledged the agreement, and the parties proceeded to establish the factual bases to support the convictions. After confirming her guilty plea and advising her of her rights, the trial court set the matter for sentencing.

Three days before the sentencing hearing, the State conceded that, as an included offense of murder, Monroe's conviction for murder in the perpetration of a robbery should be vacated to avoid a double-jeopardy violation. At the sentencing hearing itself, Monroe took things a step further, arguing that the "substantial bodily injury in the [F2] robbery charge is an included offense in the murder" and, thus, would also amount to a double-jeopardy violation. *Id.* at 44. The parties then argued the merits of the claim. Without expressly ruling on the double-jeopardy issue, the trial court entered judgment of conviction on the murder and F2

---

[4] *See Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001).

robbery counts but did "not enter a separate judgment of conviction or sentence" for the felony-murder count. *Id.* at 53. The Court of Appeals affirmed.

Generally, a defendant who pleads guilty at trial waives the right to challenge his conviction on direct appeal. *Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996). There are two exceptions to this rule: when a defendant challenges the trial court's sentencing decision, and only then if the decision rests on the court's sentencing discretion (rather than on the terms of a plea agreement); and when the trial court denies a motion to withdraw a guilty plea prior to sentencing. *Id.* at 396; *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001). A defendant must raise all other claims in a petition for post-conviction relief. *Tumulty*, 666 N.E.2d at 396. Three principal reasons motivate this procedural rule: the need for an adequate factual record to resolve the defendant's claim, which an appellate court, ill-equipped to conduct its own factual inquiry, may find lacking; ensuring finality of the dispute; and promoting judicial economy by limiting the appellate caseload. *Id.*; *see also Hayes v. State*, 906 N.E.2d 819, 821 (Ind. 2009).

Monroe argues that, when pleading guilty to the charging information without the benefit of a plea agreement, a defendant retains the right on direct appeal to challenge their conviction on double-jeopardy grounds. Pet. to Trans. at 8. But given the limitations imposed on her by the *Tumulty* rule, she urges this Court to "reconsider" its precedent. *Id.* at 2, 9. According to her, the policy reasons cited in *Tumulty* and its progeny— finality and judicial economy—do *not* support denying review on direct appeal in circumstances like hers. *Id.* at 9. What's more, she submits, the record here "is sufficient to examine the double jeopardy issue." *Id.*

## I. Does the *Tumulty* rule warrant an exception in certain cases?

I begin my discussion by considering Monroe's argument that, when pleading guilty *without* the benefit of a plea agreement, a defendant retains the right on direct appeal to challenge their conviction on double-

jeopardy grounds. Concluding that *Tumulty* precludes direct appeal only when a defendant voluntarily agrees to his convictions under the terms of a binding plea agreement, I then contemplate circumstances, like those here, in which strict adherence to the *Tumulty* rule subverts the policy reasons underlying that rule. Finally, I briefly discuss the tension between *Tumulty* and federal law as another reason for recognizing a waiver exception in certain circumstances.

## A. A defendant does *not* waive the right to directly appeal an illegal conviction merely by pleading guilty.

The State insists that *Tumulty* bars a double-jeopardy claim on direct appeal whenever a defendant pleads guilty, whether with or without a written plea agreement. Appellee's Br. at 10; Opp. to Trans. at 8. In support, the State relies on *McDonald v. State*, a per curiam decision in which we applied the "well-established" *Tumulty* rule to a defendant who pled guilty "without a plea agreement." 179 N.E.3d 463, 464 (Ind. 2022) (internal citation and quotation marks omitted). Given our lack of reasoning and analysis in *McDonald*, I take the opportunity here to consider the issue.

I start with *Tumulty* itself. The defendant in that case appears to have pled guilty without the benefit of a plea bargain. *See* 666 N.E.2d at 395 (observing that Tumulty pled guilty to "all counts" in "the midst of his trial" while "leaving sentencing" to the trial court). But certain language in the Court's opinion minimizes that fact. In articulating its waiver rule, the Court explicitly premised it (in part) on the plea-bargaining process—*i.e.*, the "legal act" of "bring[ing] to a close the dispute between the parties, much as settling civil parties do by submitting an agreed judgment." *Id.* at 396. Allowing an "appeal by settling parties would," the Court explained, "make settlements difficult to achieve in any litigation." *Id.* By contrast, direct appeal remains open for those defendants challenging the trial court's *discretionary* sentencing decision, "i.e., where the sentence is not fixed by the plea agreement." *Collins v. State*, 817 N.E.2d 230, 231 (Ind. 2004) (citing *Tumulty*, 666 N.E.2d at 395–96).

Second, several Court of Appeals' cases contradict the *McDonald* Court's depiction of the *Tumulty* rule as "well-established" in cases where the defendant pled guilty without the benefit of a plea agreement. In *McElroy v. State*, for example, the court acknowledged the general rule that "a defendant who pleads guilty is not allowed to raise a double jeopardy challenge to his convictions." 864 N.E.2d 392, 396 (Ind. Ct. App. 2007), *trans. denied*. But because the defendant there had "not entered" his guilty plea "to achieve some sort of advantageous position," the panel allowed him to proceed with his claim. *Id.* And in *Snyder v. State*, the appellate panel declined to read *Tumulty* as applying to a defendant who pled guilty "without the benefit of a plea agreement" and when, given both parties' concession to the double-jeopardy violation, the conviction error was "unmistakable on the face of the record." 176 N.E.3d 995, 999–1000 (Ind. Ct. App. 2021); *see also Kunberger v. State*, 46 N.E.3d 966, 971 (Ind. Ct. App. 2015) (recognizing an exception to *Tumulty* when a defendant pleads guilty to the charged offenses "without the benefit of a plea agreement" and when the challenged "offenses plainly arose from the same actions") (internal citation and quotation marks omitted); *Thompson v. State*, 82 N.E.3d 376, 379 (Ind. Ct. App. 2017) (holding along similar lines), *trans. denied*.

Notably, this Court has never expressly overruled this precedent, and I find nothing in our decisional law that contradicts it.

In *Mapp v. State*, this Court, in a unanimous opinion, described *Tumulty* as having "reiterated our long-standing rule that a direct appeal is not the proper procedural avenue for a defendant to attack a *plea agreement*." 770 N.E.2d 332, 333 (Ind. 2002) (emphasis added). The defendant in that case agreed to plead guilty to two drug-related charges in exchange for a reduced sentence. *Id.* The Court of Appeals vacated the defendant's guilty plea on one of the counts, declaring the plea agreement invalid "because it was clear from the face of the charging instrument that the two counts violated double jeopardy principles." *Id.* This Court disagreed, holding that the defendant had "waived his right to challenge his convictions on double jeopardy grounds when he entered his plea agreement." *Id.* at 334. "Plea bargaining is a tool used by both prosecutors and defendants to expedite the trial process," the Court explained, adding that a defendant

waives a "whole panoply of rights" by voluntarily entering into a plea agreement, including "the right to attack collaterally one's plea based on double jeopardy." *Id.* at 334–35. Carving out an exception for "facially duplicative charges," the Court concluded, "would deprive both prosecutors and defendants of the ability to make precisely the kind of bargain" they struck to achieve their advantageous positions. *Id.* at 335.

A year later, this Court decided *Kincaid v. State*, another unanimous opinion. In that case, a post-conviction court set aside the defendant's convictions (to which he'd pled guilty) after having nearly completed his two-year probation term. 778 N.E.2d 789, 790 (Ind. 2002). On remand, the defendant again pled guilty (to the same offenses) and again received two years of probation, but the trial court failed to credit him with the time he had served before prevailing in the post-conviction court. *Id.* at 790–91. When the defendant subsequently violated his probation, the State sought to revoke it. *Id.* at 791. In response, the defendant argued that, had the trial court properly credited him with time served, his second two-year probation term would have expired before the violation occurred. *Id.* Denying him that time, he claimed, amounted to a double-jeopardy violation. This Court agreed, concluding that double-jeopardy principles required crediting him with probation time served under the first sentence. *Id.* at 792. Citing *Mapp* (but with no explicit reference to *Tumulty*)**,** the Court agreed that "voluntarily accepting the terms of a plea agreement results in the waiver of double jeopardy claims arising from the sentence imposed." *Id.* But *Mapp* and the "earlier cases" on which it relied, the Court opined, didn't address the circumstances there. *Id.* Rather, those cases involved "sentences that ordinarily would violate double jeopardy principles" but which were "imposed as a result of a bargain specifically calling for conviction on both crimes." *Id.* "Such an agreement," the *Kincaid* Court stressed, "forecloses the risk of charges on other counts and typically provides an agreed or a maximum punishment," the defendant's acceptance of which "waives any double jeopardy objection to conviction for the agreed crimes." *Id.* In *Kincaid*, however, "there was no bargain" struck between the State and the defendant "to forego crediting" him the probation time he "already had served in exchange for some other consideration." *Id.* And under those circumstances, the Court concluded,

the defendant "cannot be said to have agreed in the plea agreement to forego his constitutional right to credit for time served." *Id.*

Both before and after the decisions in *Mapp* and *Kincaid*, so far as my research reveals, this Court has consistently enforced the *Tumulty* rule *only* as a means of barring a defendant from collaterally attacking the terms of a plea agreement.[5] Plea agreements reflect "the multifaceted bargains that local prosecuting attorneys strike with criminal defendants" and from which "both parties receive something of value." *Anderson v. State*, 269 N.E.3d 817, 820, 823 (Ind. 2025). This exchange of mutual benefits is "binding upon both parties when accepted by the trial court." *State ex rel. Goldsmith v. Marion Cnty. Superior Ct.*, 419 N.E.2d 109, 114 (Ind. 1981). So, if a "defendant pleads guilty and agrees to a specific sentence, he waives his right to challenge the propriety of his sentence" on direct appeal, *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008), even if that sentence would otherwise violate the law, *Crider v. State*, 984 N.E.2d 618, 623 (Ind. 2013). Likewise, when the defendant voluntarily bargains for a conviction premised on "facially duplicative charges or an offense and its factually lesser-included charge," his acceptance of such terms "waives any double jeopardy objection to conviction for the agreed crimes" based on the

---

[5] *See also, e.g., Sholes v. State*, 878 N.E.2d 1232, 1235 (Ind. 2008) (citing *Tumulty* for the proposition that a defendant may not challenge on direct appeal a specific sentence established under a "plea agreement" with the State); *Mills v. State*, 868 N.E.2d 446, 452–53 (Ind. 2007) (holding that defendant "relinquished the right to challenge" on direct appeal "his sentence as an impermissible double enhancement" because it was "imposed pursuant to a plea agreement" with "favorable outcomes" for him); *Witt v. State*, 867 N.E.2d 1279, 1280 n.8 (Ind. 2007) (citing *Tumulty* in rejecting defendant's claim on direct appeal that the "trial court deviated from the terms of the plea agreement" by reducing one of his convictions to a lesser felony); *Weatherford v. State*, 697 N.E.2d 32, 33–34 n.4 (Ind. 1998) (applying the *Tumulty* rule to "sentencing agreements" to the extent that such contracts "qualify as plea agreements") (internal citation and quotation marks omitted). In defense of its position, the State also relies on this Court's decision in *Hayes v. State*, 906 N.E.2d 819 (Ind. 2009). But that case provides questionable support at best. While noting that the defendant there "submitted an 'open' guilty plea," *id.* at 820, the Court followed its statement with a direct citation to *Collins v. State*, in which this Court defined an "open plea" as a "*plea agreement* where the issue of sentencing is left to the trial court's discretion," 817 N.E.2d 230, 231 (Ind. 2004) (emphasis added). The *Hayes* Court also quoted from *Lee v. State* for the proposition that "[d]efendants who plead guilty *to achieve favorable outcomes* give up a plethora of substantive claims and procedural rights." 906 N.E.2d at 821 n.2 (quoting 816 N.E.2d 35, 40 (Ind. 2004)) (emphasis added).

presumption that he benefitted from the agreement. *Kincaid*, 778 N.E.2d at 792 (internal citations and quotation marks omitted); *see also Games v. State*, 743 N.E.2d 1132, 1134–35 (Ind. 2001).

If, on the other hand, the defendant pleads guilty *without* the benefit of a plea agreement, *i.e.*, when there is "*no bargain*" between the parties, the defendant "cannot be said" to have relinquished his claim. *See Kincaid*, 778 N.E.2d at 792 (emphasis added). Instead, the defendant is "entitled to presume that the trial court would sentence him in accordance with the law." *Crider*, 984 N.E.2d at 625. We've affirmed this basic principle in several recent cases. *See, e.g.*, *Davis v. State*, 217 N.E.3d 1229, 1236 n.3 (Ind. 2023), *as modified* (Oct. 3, 2023) (acknowledging that, under *Crider*, a defendant may directly appeal an unlawful sentence he never bargained for); *Anderson*, 269 N.E.3d at 821 (reiterating the "central legal tenet" set forth in *Crider*). And I find no reason to depart from it today.[6]

In short, a defendant does not waive the right to directly appeal an illegal conviction unless he voluntarily agrees to such a conviction under the binding terms of a plea agreement with the State.

## B.  Strict adherence to the *Tumulty* rule may undermine its underlying policies.

The *Tumulty* rule, as noted above, rests on three principal policy reasons: the need for an adequate factual record to resolve the defendant's

---

[6] Of course, even without such an agreement, a defendant still waives certain constitutional rights by voluntarily pleading guilty, including the right to a public and speedy trial by jury and the right to confront and cross-examine witnesses. *See* Ind. Code §§ 35-35-1-2(a)(2), (5). But a defendant who waives *those* rights, simultaneous to his guilty plea, knows exactly "what is being yielded up." *United States v. Melancon*, 972 F.2d 566, 571–72 (5th Cir. 1992) (Parker, J., concurring). Because a guilty plea may *precede* an appealable issue, whether at sentencing or when the trial court enters judgement of conviction, the same level of foresight is often lacking when a defendant waives the right to appeal, leading some courts to reject those waivers as unenforceable on "voluntary and knowing" grounds. *United States v. Raynor*, 989 F. Supp. 43, 44 (D.D.C. 1997), *abrogation recognized by United States v. Powers*, 885 F.3d 728, 732–33 (D.C. Cir. 2018); *see also Wihebrink v. State*, 192 N.E.3d 167, 168 (Ind. 2022) (David, J., dissenting from denial of transfer) (expressing similar concerns).

claim, which an appellate court, ill-equipped to conduct its own factual inquiry, may find lacking; the desire to ensure finality of the dispute; and the primacy of promoting judicial economy by limiting the appellate caseload. 666 N.E.2d at 396.

The first of these policy reasons involves the factual-basis requirement, which "ensures that a person who pleads guilty truly is guilty." *Butler v. State*, 658 N.E.2d 72, 76 (Ind. 1995). Accordingly, a trial court may not enter judgment on a guilty plea "unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea." Ind. Code § 35-35-1-3(b). Because the "degrees and kinds of inquiries" into a defendant's plea necessarily vary from case to case, a factual-basis finding depends not on a "precise quantum of evidence" but, rather, on "a subjective determination that permits a court wide discretion." *Butler*, 658 N.E.2d at 76–77 (internal citation and quotation marks omitted). Given this flexibility in the standard of proof, the facts adduced at a guilty-plea hearing may not suffice to resolve the underlying factual disputes of a double-jeopardy claim on direct appeal. Thus, the more appropriate avenue for the guilty-plea defendant is to file a petition for post-conviction relief, "thereby triggering a procedure in which the facts can be litigated." *Mapp*, 770 N.E.2d at 334; *see* Ind. Post-Conviction Rule 1(5) (permitting the court to "receive affidavits, depositions, oral testimony, or other evidence").

At the same time, the factual-basis requirement plays an important role in safeguarding against potential double-jeopardy violations. An inquiry by the court, for example, should ensure the defendant comprehends the "nature of the charge," assist him in understanding "that his conduct" or actions "actually fall within the charge" to which he's pleading guilty, and increase "the visibility of charge reduction practices." *Butler*, 658 N.E.2d at 76 (internal citation and quotation marks omitted). If the facts adduced during the plea colloquy reveal the potential for impermissibly cumulative punishment, the defendant may challenge the propriety of the charges, *see, e.g.*, *Idle v. State*, 587 N.E.2d 712, 715 (Ind. Ct. App. 1992), *trans. denied*, the State may agree to drop one of the charges (like here), or the trial court may elect to enter judgment of conviction on fewer than all charged offenses, *see, e.g.*, *Thompson*, 82 N.E.3d at 379–80.

If the existing factual record permits a court to resolve a guilty-plea defendant's double-jeopardy claim on direct appeal, and if there's no dispute over the factual basis supporting the convictions, strict adherence to the *Tumulty* rule, in certain cases, arguably risks undermining the rule's other two policy reasons: finality and judicial economy. For example, as Monroe points out, the rule would preclude her from consolidating her sentencing claims (which she *does* have the right to directly appeal under *Tumulty*) with her double-jeopardy claim (which *Tumulty* would require her to raise on post-conviction). What's more, dismissal of the guilty-plea defendant's double-jeopardy claim on direct appeal only to force that defendant to raise it later in a post-conviction proceeding—the *outcome of which itself is likely to be appealed*—hardly makes the process final and efficient. And that's not to mention the "incidental costs" associated with the defendant's incarceration while awaiting post-conviction proceedings to raise a claim, *e.g.*, "an overburdened court system," overcrowded prisons, the "absence of an income source in many families," and the long-term effect on Hoosier taxpayers. *See DeWees v. State*, 180 N.E.3d 261, 265 (Ind. 2022).

To be sure, the *Tumulty* rule plays an important role in shielding appellate courts from having to address the tricky question of what is and what is not an adequate factual basis for resolving a double-jeopardy claim. It's one thing when the State essentially admits to the adequacy of the record to resolve such a claim (like here) or when both parties concede to the double-jeopardy violation (as in *Snyder*). But it's another thing for an appellate court to decide, absent such concessions, whether the challenged offenses "plainly arose from the same actions." *See Kunberger*, 46 N.E.3d at 971 (internal citation and quotation marks omitted).

Still, courts on direct appeal regularly conduct fact-sensitive inquiries under the *Tumulty* rule's sentencing exception. Indiana's sentencing-cap statute limits the aggregate sentence a trial court can impose for multiple nonviolent convictions arising out of the same "episode of criminal conduct." I.C. § 35-50-1-2(d). The statute defines an "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). The factual analysis necessary for deciding whether multiple offenses constitute an

"episode of criminal conduct"—akin to a factual analysis in a double-jeopardy claim[7]—has presented few, if any, challenges to appellate courts when analyzing a defendant's post-guilty-plea sentencing claim. *See, e.g., Gober v. State*, 163 N.E.3d 347, 352, 357 (Ind. Ct. App. 2021), *trans. denied*; *Yost v. State*, 150 N.E.3d 610, 612, 615 (Ind. Ct. App. 2020).

## C. *Tumulty* stands in tension with a long line of federal precedent.

Finally, it's worth briefly discussing the tension between *Tumulty* and federal precedent as another reason for rejecting a strict adherence to the *Tumulty* rule. Under federal law, a valid guilty plea forecloses a collateral attack on the defendant's convictions except "where on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Menna v. New York*, 423 U.S. 61, 62–63 n.2 (1975) (holding that a guilty plea "does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute" and remanding for consideration of the defendant's double-jeopardy claim on the merits). Thus, a guilty-plea defendant may raise a federal constitutional claim on direct appeal, so long as the alleged violation didn't occur "prior to the entry of the guilty plea" and so long as the defendant's claim doesn't contradict the plea agreement and can be "resolved without any need to venture beyond th[e] record." *Class v. United States*, 583 U.S. 174, 181 (2018) (internal citation and quotation marks omitted). *See, e.g., Griffin v. State*, 540 N.E.2d 1187, 1188 (Ind. 1989) (citing *Menna* for the proposition that, under the federal constitution, a defendant who pled guilty to "facially duplicative" charges may "challenge the resulting convictions"

---

[7] *See Wadle v. State*, 151 N.E.3d 227, 253 (Ind. 2020) (specifying that, if one offense is included in the other, the inquiry asks whether "the defendant's actions were so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction") (internal quotation marks omitted).

on direct appeal); *Jordan v. State*, 676 N.E.2d 352, 354 (Ind. Ct. App. 1997) (citing *Broce*, *Menna*, and *Griffin* for the same proposition).

Although not binding when a defendant's challenge on direct appeal arises under state law, this precedent, in my view, offers a compelling framework for criminal defendants in Indiana to seek relief.[8]

For one thing, despite the protections recognized in *Broce*, *Menna*, and *Class* (and despite common misperceptions), the federal constitution contains no right to appellate review of a criminal conviction. Marc M. Arkin, *Rethinking the Constitutional Right to a Criminal Appeal*, 39 UCLA L. Rev. 503, 504 (1992) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). All the more reason, then, to recognize commensurate protections when our state constitution expressly guarantees "in all cases an absolute right to one appeal." Ind. Const. art. 7, § 6. What's more, the principle under federal law that permits a collateral attack on direct appeal unless the alleged violation occurred "*prior* to the entry of the guilty plea," *Class*, 583 U.S. at 181 (emphasis added), aligns fully with the defendant's reasonable expectation, under Indiana law, that, at the time of her guilty plea, the trial court will subsequently impose its sentence and enter judgment of conviction "in accordance with the law," *Crider*, 984 N.E.2d at 625.

\* \* \* \*

For the reasons above, I see no need to treat the *Tumulty* rule as so strict and inflexible as to preclude relief in every case. In my view, a guilty-plea defendant should be able to raise a double-jeopardy claim on direct appeal if (1) the alleged violation arose after entry of the guilty plea, (2) the defendant never agreed to the alleged violation, (3) an appellate court

---

[8] While resolution of a double-jeopardy claim under Indiana law requires an appellate court to look beyond the "face [of] the charge[s]," *see Menna v. New York*, 423 U.S. 61, 62–63 n.2 (1975), and to "examine the facts underlying" those charges, *Wadle*, 151 N.E.3d at 249, federal law imposes a similar standard when assessing the preclusive effect of a guilty plea: if the appellate court can resolve the claim without "further proceedings at which to expand the record with new evidence," a defendant, despite having pled guilty, retains the right to collaterally attack his convictions on direct appeal, *United States v. Broce*, 488 U.S. 563, 575–76 (1989).

can resolve the claim based on the existing record, and (4) there's no legitimate dispute over the factual basis supporting the conviction.

## II. Given the circumstances here, *Tumulty* should not preclude Monroe's double-jeopardy claim on direct appeal.

In my view, this case meets the criteria set forth above for departing from *Tumulty*'s application.

First, the alleged violation—the trial court's improper entry of judgment of convictions—arose *after* Monroe pled guilty. Second, absent a written plea agreement with the State, Monroe never agreed to the alleged violation. To be sure, while Monroe advised the trial court at the change-of-plea hearing that the parties had agreed to "merge" the felony-murder count with the murder count, she raised no objection to the murder and F2 robbery counts as presenting a similar double-jeopardy problem, arguably resulting in waiver of the issue. However, at the sentencing hearing, the trial court expressly declined to find the double-jeopardy issue waived, and the parties argued the merits of the claim at length. Tr. Vol. 2, p. 47.

Third, an appellate court can resolve Monroe's claim based on the existing record. At her guilty-plea hearing, the trial court recited the counts as charged by the State and both parties asked Monroe questions to establish a factual basis for the convictions—where the offenses occurred, how they unfolded, the scope of Monroe's involvement, etc. Then, "to supplement the stipulated factual basis," the State offered the probable-cause affidavit—a four-page document detailing the investigation, the statements from both defendants, and their description of the offenses. *Id.* at 19; App. Vol. 2, pp. 20–23. Of course, the facts adduced at a full-fledged trial or at a post-conviction hearing will almost certainly exceed the facts adduced at a guilty-plea hearing. *See Butler*, 658 N.E.2d at 77 (a guilty-plea hearing need not amount to "a veritable bench trial"). But that didn't stop the State from raising double-jeopardy arguments in its sentencing memorandum.

Finally, there's no legitimate dispute over the factual basis supporting the conviction. Despite its insistence *now* that a double-jeopardy claim "is a fact-sensitive inquiry that is properly addressed after a hearing" on post-conviction, Opp. to Trans. at 12, the State itself agreed in its sentencing memorandum that, "based on the facts of [Monroe's] case and the facts adduced from the charging information," her conviction for murder in the perpetration of a robbery, as an included offense of murder under *Wadle v. State*, should be vacated to avoid a double-jeopardy violation. App. Vol. 2, pp. 86–87. Indeed, the State explicitly engaged in a fact-sensitive inquiry under *Wadle*, concluding that the "two offenses are 'compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *Id.* at 87 (quoting *Wadle*). Given the State's reliance on the existing record to make a double-jeopardy argument in proceedings before the trial court, principles of fairness dictate that Monroe should be able to rely on the same record to resolve her double-jeopardy claim on direct appeal.

## Conclusion

For the reasons above, I would hold that *Tumulty* does not preclude Monroe from proceeding with her double-jeopardy claim on direct appeal, and I would remand to the Court of Appeals to consider her double-jeopardy claim on the merits.